STEPHEN PROZINSKI *vs.* NORTHEAST REAL ESTATE
SERVICES, LLC.

No. 01-P-994.

Middlesex. February 12, 2003. - October 16, 2003.

Present: CYPHER, MASON, & McHUGH, JJ.

*Contract,* Employment, Severance agreement, Performance and breach. *Employment,* Severance agreement, Sexual harassment. *Labor,* Wages. *Damages,* Breach of fiduciary duty.

In a civil action alleging that the defendant's refusal to pay the plaintiff severance upon termination of his employment with the defendant, according to the terms of a letter of employment, was a violation of the wage act, G. L. c. 149, § 148, the judge properly granted summary judgment in favor of the defendant, where the wage act did not refer to severance pay or similar terms; where the severance pay was not earned but was contingent upon severance, and thus was outside the scope of the wage act; and where there was no need to resort to the popular meaning of the term "wages," to secondary authorities, or to other statutes using the term. [602-605]

In a civil action arising from the defendant's refusal to pay the plaintiff severance upon termination of his employment with the defendant, according to the terms of a letter of employment, the judge correctly determined that a contract existed between the parties and that the severance pay provision was unambiguous [605-606]; however, the judge erred in granting summary judgment in favor of the plaintiff on this claim, where the defendant's affirmative defense and counterclaim that the plaintiff's alleged "gross misconduct" in the performance of his duties constituted a material breach of his fiduciary duty to the defendant that operated as a breach of contract created a genuine issue of material fact to be resolved by a fact finder [606-610].

This court did not reach the question whether to rely on the "after-acquired" evidence in a civil action arising from the defendant's refusal to pay the plaintiff severance upon termination of his employment with the defendant, according to the terms of a letter of employment. [610-612]

CIVIL ACTION commenced in the Superior Court Department on June 2, 1999.

The case was heard by *Allan van Gestel,* J., on motions for summary judgment, and a proceeding on damages was heard by *Margaret R. Hinkle,* J.

*George A. McLaughlin, III (Theodore E. Daiber* with him) for the defendant.

*Todd A. Newman (Terence P. McCourt* with him) for the plaintiff.

CYPHER, J. This appeal arises from the alleged failure of Northeast Real Estate Services, LLC (Northeast), to pay to Stephen Prozinski severance pay and benefits in accordance with the terms of a letter, signed by both parties, which offered employment to Prozinski. Northeast employed Prozinski as the firm's chief operating and financial officer from April, 1998, until February, 1999.

In the fall of 1998, the principals who had formed Northeast learned that morale among the women employees was poor. On November 23, 1998, three female Northeast employees wrote a letter to the principals. The women complained that Prozinski had created a working environment that was so unfair and discriminatory that they were considering seeking other employment.

On February 2, 1999, Northeast discharged Prozinski on grounds of financial misconduct and sexual discrimination and harassment. After Prozinski's employment was terminated, Northeast learned of allegations that Prozinski had also sexually harassed a fourth female employee.[1] They also learned that he had used company computers to distribute pornography to employees and to exchange obscene electronic mail with men in and out of the office.

Prozinski filed a complaint against Northeast, alleging (1) violation of the wage act, G. L. c. 149, § 148; (2) breach of an employment agreement; (3) breach of an implied covenant of good faith and fair dealing; (4) wrongful termination of his employment; and (5) unjust enrichment or quantum meruit. Northeast asserted counterclaims alleging breach of fiduciary duty and fraud.

The parties filed cross motions for summary judgment. A Superior Court judge allowed summary judgment (1) against Prozinski on his claim under the wage act; (2) for Prozinski on

---

[1]The employee signed an affidavit detailing Prozinski's conduct toward her. The conduct was more sexual in nature than the conduct reported by the other women.

his claim of breach of an employment agreement; (3) against Northeast on its counterclaims for breach of fiduciary duty and fraud; and (4) against Prozinski on his remaining claims.

A hearing on damages was conducted by a different Superior Court judge. She denied Northeast's request to offer "after-acquired" evidence of Prozinski's sexual misconduct in mitigation of his damages and ordered that judgment enter in favor of Prozinski in the sum of $104,431.76, with interest and costs, on his claim for breach of an employment agreement. A second amended judgment entered disposing of all claims as discussed.

Prozinski appeals the dismissal of his claim for violation of the wage act, G. L. c. 149, § 148. Northeast appeals (1) the grant of summary judgment in favor of Prozinski on his count of breach of employment contract; (2) the dismissal of its counterclaim for breach of fiduciary duty; and (3) the exclusion of the "after-acquired" evidence. We affirm in part and reverse in part.

1. *Background.* On April 6, 1998, William F. Rand, III, the chief operating officer of the Saracen Companies, Inc., delivered a letter to Prozinski offering to employ him as chief operating officer-chief financial officer (COO-CFO) of a "to be formed" property management company. The letter detailed approximately nine terms of employment, including "severance." The "severance" provision stated, "During the first 24 months of employment if your employment is terminated by the Company then the Company will pay you the equivalent of 1 full year's pay including benefits." The letter also provided, under a category titled "Other Matters":

> "We will work with you on a plan that address[es] the following matters:
>
> "— How your bonus from year to year [a]ffects your base salary in the following year.
>
> "— How your bonus will be earned after you are vested.
>
> "— your ownership interest can be bought back once you are vested.
>
> "— How you will receive ownership in real estate

deals in the future that the Company will have a direct involvement in.

"— Defining what the termination language will be for the contract."

The letter provided a space for Prozinski to sign under the phrase "Accepted By." Prozinski signed the letter, returned it to Rand, and began his employment shortly after April 6, 1998. Saracen Companies, Inc., paid Prozinski until Northeast was formed.

Northeast paid Prozinski in accordance with the terms in the April 6 letter until it terminated him by a letter dated February 2, 1999. The letter referred to improper reimbursement requests, financial mismanagement, and complaints from female employees concerning their treatment by Prozinski. The letter indicated that Northeast considered Prozinski's conduct to be a breach of his fiduciary duty to the company and stated that it was, therefore, not obligated to pay severance to Prozinski.

2. *Standard of review.* The standard of review for a grant of summary judgment requires that we take the evidence in the light most favorable to the nonmoving party to determine whether any genuine issues of material fact existed and whether the moving party was entitled to judgment as a matter of law. *Harrison* v. *NetCentric Corp.*, 433 Mass. 465, 468 (2001). See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

3. *Prozinski's claim for nonpayment of wages.* Prozinski claims that Northeast's refusal to pay him severance was a violation of G. L. c. 149, § 148, the wage act, which requires timely payment of wages. No material facts are in dispute; the question presented is whether Northeast was entitled to judgment as matter of law.

Under the wage act, an employee whose employment is terminated involuntarily must be paid in full on the day of discharge.[2] Violations of the provision may result in injunctive relief, damages, treble damages, attorney's fees and costs, and

---

[2] The statute provides in pertinent part: "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him . . . and any employee discharged from such employment shall be paid in full on the day of his discharge . . . . The word 'wages' shall include any holiday or vacation payments due an employee under an oral or

criminal penalties. G. L. c. 149, §§ 27C, 148, 150. The general purpose of the statute is "to assure that employees are paid their wages on a weekly basis." *Commonwealth* v. *Savage*, 31 Mass. App. Ct. 714, 714 (1991). See *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.*, 340 Mass. 144, 145 (1959). "The statute was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages." *Cumpata* v. *Blue Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000). We have construed the wage act narrowly. See *Commonwealth* v. *Savage*, 31 Mass. App. Ct. at 716.

Although the statute expressly refers to holiday pay, vacation pay, and definitely determined commissions, it does not refer to "severance pay" or similar terms. Prozinski argues that severance pay falls within the statute because his severance pay was "definitely determined" and therefore had "become due and payable." A plain reading of the statute reveals that the quoted statutory terms refer solely to commissions.

Prozinski next argues that the severance pay provided for in the agreement is governed by the wage act because the wage act is intended to deter employers from denying bargained-for compensation to terminated employees and that the severance pay was a bargained-for component of his wage package. Prozinski relies on *Cumpata* v. *Blue Cross Blue Shield of Mass., Inc., supra*, to support his argument. *Cumpata* does not assist Prozinski. In *Cumpata*, the court considered whether the wage act applied to an incentive commission, which was above and beyond the employee's base salary. *Id.* at 168. The court concluded that the commission in question was triggered by a contingency and was, therefore, outside the scope of the wage act. *Ibid.* We think the same reasoning applies here. Prozinski's severance pay was not earned but contingent upon severance. Furthermore, as the court observed, "there is no evidence that the Legislature intended to provide treble damages and attorneys

---

written agreement. . . . This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of [§ 150]." G. L. c. 149, § 148.

fees and costs to professionals enforcing their asserted contract rights." *Ibid.*

Prozinski also argues that we should apply to the wage act the reasoning of *Jancey* v. *School Comm. of Everett,* 421 Mass. 482, 490-493 (1995), in which the court considered what types of compensation and benefits should be included in the term "wages" as used by the equal pay act, G. L. c. 149, § 105A. The equal pay act in *Jancey* did not define the term "wages" or provide any guidance as to its scope. The court resorted, therefore, to Black's Law Dictionary and to other statutes for a definition of wages.[3] The court quoted a definition from Black's Law Dictionary that included the term "dismissal wages."[4] *Id.* at 490-491. In contrast, G. L. c. 149, § 148, refers to "weekly" or "biweekly" wages having been earned during a particular pay period and specifically includes in its definition "holiday or vacation pay" as well as definitely determined commissions. There is, therefore, no need to resort to the popular meaning of the term "wages," to Black's Law Dictionary, or to other statutes using the term "wage." Furthermore, contrary to the suggestion in Prozinski's brief, the court in *Jancey* did not consider or include severance payments within the meaning of the term "wages."

Prozinski also argues that we should turn to the definition of

---

[3]In *Jancey,* the court construed the term "wages" broadly, after consulting the dictionary, the State unemployment compensation statute, and Federal regulations applicable to the Federal equal pay act, and after considering policy arguments. The court concluded that for purposes of determining whether cafeteria workers were paid a lower wage than custodians for "comparable work," other forms of remuneration and benefits should be considered in addition to the base hourly pay. *Jancey* v. *School Comm. of Everett,* 421 Mass. at 493.

[4]Black's Law Dictionary 1579 (6th ed. 1990) defines wages as "[e]very form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him. . . . Term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to manner in which such compensation is computed." Black's Law Dictionary defines "severance pay" as "[m]oney (apart from back wages or salary) paid by an employer to a dismissed employee. Such a payment is often made in exchange for a release of any claims that the employee might have against the employer." Black's Law Dictionary 1379 (7th ed. 1999).

the word "wages" in the unemployment compensation statute, G. L. c. 151A, § 1(*s*). The unemployment compensation statute refers to severance pay as "remuneration." However, the term "severance pay" was added by the Legislature only after the Supreme Judicial Court had held that, in the absence of that language, "remuneration" did not include severance pay. Compare *Bolta Prods. Div., Gen. Tire & Rubber Co.* v. *Director of Div. of Employment Security,* 356 Mass. 684, 688-689 (1970), with *Ruzicka* v. *Commissioner of Dept. of Employment & Training,* 36 Mass. App. Ct. 215, 217 n.5 (1994).

In light of the narrow construction that has been afforded the wage act and considering the foregoing discussion, it is unnecessary to reach Prozinski's argument that some jurisdictions have interpreted similar statutes to include severance pay within the meaning of the term "wages."

Finally, Prozinski relies on a policy argument, maintaining that to exempt severance pay from § 148 would vitiate the purpose of the statute by permitting employers to characterize compensation as something other than "wages." Such an argument is more properly addressed to the Legislature. We therefore affirm the dismissal of this claim.

4. *Prozinski's claim for breach of contract.* Northeast argues that summary judgment should not have been granted in favor of Prozinski on his count of breach of contract against Northeast. According to Northeast, the contract language contained inconsistent and ambiguous terms regarding the circumstances in which severance would be payable, because the April 6 letter expressly contemplated future negotiation of a more detailed contract.

The letter provided, under the categorical label "Severance," that "[d]uring the first 24 months of employment if your employment is terminated by the Company then the Company will pay you the equivalent of 1 full year's pay including benefits." Northeast claims that this language is cast into ambiguity by language under the categorical label "Other Matters" that stated that the company "will work with you on a plan that address[es] . . . [d]efining what the termination language will be for the contract."

The severance provision is unambiguous, as it is not "susceptible of more than one meaning." *Citation Ins. Co.* v.

*Gomez*, 426 Mass. 379, 381 (1998). The provision plainly states that if Northeast terminated Prozinski's employment within twenty-four months, Northeast would pay Prozinski one year's pay and benefits. See *Suffolk Constr. Co.* v. *Lanco Scaffolding Co.*, 47 Mass. App. Ct. 726, 729 (1999) ("In interpreting a contract, the court must construe all words that are plain and free from ambiguity according to their usual and ordinary sense").

The reference to future negotiations did not change the plain meaning of the provision. Rather, the reference merely provided that the parties could negotiate another provision in a future contract. That was not done.

Furthermore, in all other ways, Northeast adhered to the letter of agreement, indicating an intent to abide by the plain meaning of its terms. See *Martino* v. *First Natl. Bank of Boston*, 361 Mass. 325, 332 (1972) (no surer way to find out what parties meant than to see what they have done).

We conclude, therefore, that the judge correctly determined that a contract existed between the parties and that the severance pay provision was unambiguous. However, summary judgment should not have been granted for Prozinski because, as we discuss below, Northeast's affirmative defense and counterclaim for breach of fiduciary duty created a genuine issue of material fact to be resolved by a fact finder.

5. *Northeast's affirmative defense and counterclaim that Prozinski was in material breach of his contract through a breach of his fiduciary duty.* Northeast contends that an issue of material fact exists as to whether Prozinski's "gross misconduct" in the performance of his duties constituted a material breach of his employment agreement, excusing Northeast from its contractual obligation to give Prozinski severance pay. According to Northeast, Prozinski's sexually discriminatory management and financial misconduct, as summarized in the termination letter,[5] was sufficient in itself to create an issue of

_____

[5]The relevant portion of the letter provided: "First, while conducting an informal audit of your reimbursements, we discovered that many of the receipts you submitted as business expenses were actually personal expenses for which you should not have been reimbursed or were submitted after we discovered that you had previously issued yourself a check from the Company. The number of these improper requests for reimbursement compels me to conclude that you made these requests knowing that they did not qualify as

material fact as to whether Prozinski had committed a material breach of contract, thereby excusing Northeast from performance. Northeast contends that Prozinski's conduct constituted a breach of fiduciary duty.

The judge rejected Northeast's affirmative defense and counterclaim because he concluded that Prozinski's conduct did not rise to the level of a breach of his fiduciary duty to the company.[6] The judge also concluded that even if Prozinski's conduct did constitute a breach of fiduciary duty which oper-

---

business expenses or were not going to properly justify your reimbursement. . . . Additionally, we have received complaints from some female employees who claim that you have treated them improperly and have condoned their mistreatment by other men in the office. Specifically, they claim that you have implicitly established two separate sets of rules in the office — one for women and one for men. They claim that you have named all of the men Vice Presidents (and not the women in equivalent positions) and constantly harass the women by making snide comments that imply that it is their responsibility to perform menial tasks such as answering phones, typing letters, and photocopying. They claim you condone this division of work along gender lines by permitting the men to give women tasks that the men should be handling on their own (such as typing letters). While we have not completed our investigation of their allegations, your actions are clearly improper and, even if they do not rise to the level of actionable sexual harassment or discrimination (which they may), they raise serious concerns about your interests in the Company, its employees, and its future success. . . . Finally, it appears that you have failed to properly track the receipts and payables for the Granite contracts including at least one instance that we are aware of where Bill Rand was given a loan against future receivables from a contract regarding a Rand family property. . . . At this point, we have determined that your continued employment is not in the best interests of the Company. . . . [S]ome of your actions constitute a breach of your fiduciary duty to the Company . . . ."

[6]It is unclear whether the judge considered the information, obtained by Northeast after it terminated Prozinski's employment, about his conduct with the fourth female employee. That information included allegations that Prozinski had intimidated and harassed the receptionist. Some of the allegations were that Prozinski made sexual remarks to other men in the office about the receptionist in her presence or while she was within hearing distance, including that the only thing she was good for was a "good blow job"; made lewd gestures toward her; regularly used obscene and vulgar language toward her in a hostile and aggressive manner; and commented inappropriately on her clothing. She asserted that she did not report his conduct because he was in charge of Northeast and as a single mother she needed her job. She also stated that Prozinski had told her that if she said anything about his behavior he would deny it and no one would believe her. Once, another man who had been present during one of Prozinski's lewd displays apologized to her, but said that if she told anyone, he and all the other men would deny it.

ated as a breach of contract, Northeast waived any defense because it acquiesced to the conduct by taking seventy days after the employee complaints to terminate Prozinski's employment and because it did not assert those grounds in the termination letter.

As we will discuss, we do not agree that Prozinski's conduct, as matter of law, could not rise to the level of breach of fiduciary duty. We also do not agree that Northeast waived its affirmative defense by not detailing more specific legal theories in its letter.

First, it appears to us that Northeast did assert in the letter a breach of fiduciary duty as a reason for termination. Second, we are aware of no authority requiring an employer to detail every legal theory in a letter of termination. Finally, whether the passage of seventy days from notice of Prozinski's conduct to the decision to terminate Prozinski constituted acquiescence to his conduct is a question of a fact to be decided by a fact finder. See *M.J.G. Properties, Inc.* v. *Hurley*, 27 Mass. App. Ct. 250, 252-253 (1989). To prove waiver, Prozinski would be required to show "clear, decisive and unequivocal conduct on the part of [Northeast] indicating that it would not insist on adherence to the agreement." *Glynn* v. *Gloucester*, 9 Mass. App. Ct. 454, 462 (1980). Given the practical and legal complexities of the modern workplace, whether seventy days is an unreasonable period of time to investigate the allegations and determine the best course of action is a question for a fact finder.

With regard to Northeast's claim that Prozinski committed a breach of his fiduciary duty that operated as a breach of contract, we conclude that there exists a genuine issue of material fact.[7]

A material breach of an agreement occurs when there is a breach of "an essential and inducing feature of the contract." *Lease-It, Inc.* v. *Massachusetts Port Authy.*, 33 Mass. App. Ct. 391, 396 (1992), quoting from *Bucholz* v. *Green Bros.*, 272

---

[7]Northeast also relies on the principle that every contract, including every employment contract, is subject to an implied covenant of good faith and fair dealing that neither party will do anything to deprive the other of the fruits of the contract. See *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104 (1977); *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 473 (1991). See generally Diamond & Foss, Proposed Standards for Evaluating When the Covenant of Good Faith & Fair Dealing Has Been Violated: A Framework for Resolving the Mystery, 47 Hastings L.J. 585, 586-589 (1996). In light of our treatment of this case, we need not address this issue.

Mass. 49, 52 (1930). See Restatement (Second) of Contracts § 237 (1981). "Whether a breach is material or immaterial normally is a question for the jury to decide." *Lease-It, Inc.* v. *Massachusetts Port Authy., supra*, citing 6 Williston, Contracts § 841, at 159 (3d ed. 1962).

The record in this case reflects a genuine issue of material fact on the question whether Prozinski's conduct amounted to a material breach of his contract with Northeast and not simply what the motion judge characterized as "boorish conduct" and "sloppy record keeping." As COO-CFO, Prozinski owed Northeast the duties of loyalty, of utmost good faith, and of protecting Northeast's interests. See *Swaney* v. *Clark-Wilcox Co.*, 331 Mass. 471, 475-476 (1954); *Chelsea Indus., Inc.* v. *Gaffney*, 389 Mass. 1, 11-12 (1983).

Viewed in the light most favorable to Northeast, Prozinski's breach of his fiduciary obligations comes from several directions. First, Northeast alleged, with some support, that Prozinski knowingly submitted false expense reports. Second, for his own purposes, Prozinski fostered an environment within the workplace that was hostile to its female employees. Third, Prozinski allegedly embarked on a course of sexual harassment of the receptionist. Fourth, Prozinski used the office computers to send obscene electronic mail and pornography.

Prozinski's placement of his own interests above those of the company he served could be found by a fact finder to constitute an act of disloyalty. See *Quinn* v. *Burton*, 195 Mass. 277, 279 (1907) (person who acts in representative capacity is not permitted to put himself in position antagonistic to interests of those whom he represents); *Geller* v. *Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 122 (1997) (fiduciary must refrain from promoting his own interests in manner injurious to corporation). One claim of sexual harassment or discrimination can be sufficient to establish a hostile work environment and subject the company to liability. See *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 538 n.21 (2001). "Under Massachusetts law, officers and directors owe a fiduciary duty to protect the interests of the corporation they serve" (footnote omitted). *Geller* v. *Allied-Lyons PLC, supra.* Prozinski's conduct put Northeast at risk of litigation.

A fact finder could also conclude that any such breach of Prozinski's fiduciary duty to Northeast amounted to a material breach of his contract, i.e., a "substantial breach going to the root of the contract." *Aerostatic Engr. Corp.* v. *Szczawinski*, 1 Mass. App. Ct. 141, 145 (1973). See generally Restatement (Second) of Contracts § 241 (1981). Such a conclusion would terminate Northeast's obligation to fulfil the contractual promises it had made, for "[i]t is well established that a material breach by one party excuses the other party from further performance under the contract." *Ward* v. *American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100 (1983). See Restatement (Second) of Contracts § 237 (1981).[8] Accord *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. 162, 171 (1997). If the jury found that Prozinski committed a material breach of the contract, then Northeast would be entitled to a judgment dismissing Prozinski's contract claim.[9]

6. *After-acquired evidence.* Northeast argues that its "after-

---

[8]We are not, contrary to the thrust of Prozinski's argument, somehow conjuring an implied condition that the parties never intended. Misconduct that produces cause for discharge may or may not amount to a material breach of contract, but we are concerned solely with the latter. Prozinski's entitlement to severance pay was conditioned on his refraining from committing material breaches of his contract during the relevant period. That condition is not of our making; the condition is well established in law. "A material failure of performance . . . operates as the non-occurrence of a condition." Restatement (Second) of Contracts § 237 comment a (1981). Nonoccurrence of a condition, in turn, postpones or terminates the promisor's obligation to perform. *Id.* at § 225. See *Chai Mgmt., Inc.* v. *Leibowitz*, 50 Md. App. 504, 514 (Ct. Spec. App. 1982) (motion for directed verdict should have been denied where question of fact existed whether employee breached his contract in action in which employee sought damages for being terminated without receiving written notice as provided for by employment contract). See also *Ehlers* v. *Langley & Michaels Co.*, 72 Cal. App. 214 (1925); *H. Vincent Allen & Assocs., Inc.* v. *Weis*, 63 Ill. App. 3d 285 (1978); *Berry* v. *Goodyear Tire & Rubber Co.*, 270 S.C. 489 (1978); *Basse* v. *Allen*, 43 Tex. 481 (1875).

[9]Northeast also argues that if Prozinski's conduct was the equivalent of a breach of fiduciary duty, he should lose the right to severance pay under the doctrine of equitable forfeiture. See *Chelsea Indus., Inc.* v. *Gaffney*, 389 Mass. at 12 (corporate officer or employee can be required to forfeit right to receive compensation for conduct in violation of duties). See also Weigand, Employee Duty of Loyalty and the Doctrine of Forfeiture, 42 Boston B.J. 6 (Sept.-Oct. 1998). In other jurisdictions, severance pay has been found to be subject to the doctrine of equitable forfeiture. See *Zakibe* v. *Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 385 (Mo. Ct. App. 2000) (as result of breach of fiduciary duty plaintiff forfeited his rights to all compensation, including bonuses and sever-

acquired evidence" of Prozinski's sexual harassment of one of its female employees created an issue of material fact whether he materially breached his employment contract. See *McDill* v. *Environamics Corp.*, 144 N.H. 635, 640-641 (2000) (applying after-acquired evidence doctrine as bar to employee's recovery on contract and as limitation on damages in tort).[10]

Massachusetts has not expressly adopted the "after-acquired evidence doctrine," although there exists some authority to suggest that it has been implicitly adopted. See *Markovits* v. *Venture Info Capital, Inc.*, 129 F. Supp. 2d 647, 653 (S.D.N.Y. 2001) (opining that "the after-acquired evidence doctrine, when applied in Massachusetts courts, is generally employed to justify wrongful terminations through evidence that the employee engaged in conduct that, although not known by the employer before termination, would have led to termination if known"), citing *Markus* v. *Boston Edison Co.*, 317 Mass. 1, 5-6 (1944). See also *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 815-817 (1991) (discussing "after the fact" discovery of

ance pay, to which he may have been entitled under contract after he began his wrongdoing). We need not decide now whether the same principle exists under Massachusetts law, for in this case, nothing of consequence turns on the point. Forfeiture is an equitable remedy. *Chelsea Indus., Inc.* v. *Gaffney, supra.* As we just stated, Prozinski's material breach of his contract, if proved at trial, terminates Northeast's obligation to make severance payment. On the present record, we do not believe that a fact finder's conclusion that Prozinski's conduct did *not* amount to a material breach of contract would nevertheless leave Northeast an equitable right to withhold severance payment.

[10]As the New Hampshire Supreme Court explained, "Some jurisdictions permit after-acquired evidence to serve as a complete bar to an employee's recovery, while other jurisdictions apply the after-acquired evidence doctrine only to mitigate an employee's damages. . . . A number of jurisdictions have concluded that a complete bar [to liability in an employee's breach of contract action] is appropriate under well-established principles of contract law because the prior misconduct of the employee excuses the employer's subsequent breach. . . . In wrongful termination tort cases, many jurisdictions apply the after-acquired evidence doctrine only to mitigate an employee's damages. . . . The doctrine is used to limit the employee's damages to the time between the wrongful termination and the time the employer discovers the misconduct . . . ." *McDill* v. *Environamics Corp.*, 144 N.H. at 640-641.

Here, the after-acquired evidence doctrine as a limit on damages could have no application. Prozinski's wrongful termination claim was dismissed and that ruling is not appealed, and the only damages at issue here (severance pay as opposed to salary) are not affected by limiting their assessment to the date of discovery of misconduct.

legitimate reasons for discharging employee). Contrast *Kaltsas* v. *Duralite Co.*, 4 Mass. App. Ct. 634, 638 (1976).

In the circumstances of this case, where the only damages at issue regard severance pay and there is no live claim of wrongful termination or of breach of an employment contract provision regarding grounds for termination, it does not appear to us to be necessary to rely on the after-acquired evidence doctrine for Northeast to introduce admissible evidence gathered in the course of its investigation or discovery on the question of material breach. We are aware of no authority that would limit Northeast at trial to the facts or legal theory set forth in its termination letter.

7. *Conclusion.* We affirm the grant of summary judgment for Northeast on Prozinski's claim for violating the wage act. We reverse the grant of summary judgment in favor of Prozinski on his claim for breach of contract, although we agree with the judge that an agreement existed between the parties and that the severance provision was not susceptible to more than one meaning. However, the evidence supporting Northeast's affirmative defense and counterclaim for material breach of contract based on breach of fiduciary duty, taken in the light most favorable to Northeast, was sufficient to establish a genuine issue of material fact.

Accordingly, we reverse so much of the second amended judgment as sets forth Northeast's liability and Prozinski's damages on his claim for breach of contract (count II of his amended complaint), and we reverse so much of that judgment as dismisses Northeast's counterclaim for breach of fiduciary duty (count I of its counterclaims[11]). The balance of the second amended judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[11]As Northeast has advanced no appellate argument regarding its counterclaim for fraud (count II of its counterclaims), it is deemed waived.