Swan, J.
C.E. Farris (“Farris”), a building contractor, filed a small claims action against Rachel Field (“Field”) demanding delivery of a certificate of title to a Saab car in partial payment for home construction services. Field successfully moved to transfer the case to the regular civil docket, and filed an answer and counterclaim. Farris amended his complaint. At the close of the evidence at trial, the jury was instructed to consider only Farris’ complaint for breach of contract, Field’s counterclaims for breach of contract and damage to property, and advisory questions on Field’s G.L.c. 93A counterclaim.[1] The jury returned a verdict for Field on her breach of contract and property damage counterclaims, awarding damages of $16,000.00 and $1,700.00, respectively. The jury further found that Field had breached her contract with Farris and her covenant of good faith and fair dealing, but awarded no damages other than the “car title to Farris.” The trial judge, based on the jury’s answers to advisory questions relating to G.L.c. 93A, awarded Field double damages on her contract claim, plus attorney’s fees. Farris has appealed on the grounds that the jury’s determination that Field had breached the covenant of good faith and fair dealing precluded any award for damages, and that the G.L.c. 93A damages should not have been doubled.
On the evidence presented, the jury could have found the following facts. On *274 October 2, 2006, Farris and Field executed a contract by which Farris agreed to remodel a back room, bathroom, family room, kitchen, and exterior areas at Field’s house in Concord for a cost of $61,400.00, plus $50.00 per hour for change orders. The contract provided for a ten (10%) percent retention by Field until the punch list was complete.[2] The parties orally agreed to reduce the price to $58,500.00 based on Field’s transfer to Farris of her inoperable Saab. Field signed and gave Farris a bill of sale for the car. She gave him a leatherette folder of documents relating to it, including manuals and work receipts. She gave him the keys.[3] The one thing the folder did not contain was a certificate of title, but Field did not intend to deprive Farris of it. She had never sold a car before, and, in her words, “it just wasn’t on my mind that the title was an issue.” The title was in another file, and she would have “absolutely given it” to Farris had he asked for it. “It just never came up,” she testified. “No mention of the title was made.”
Farris did not obtain a building permit for the work, telling Field that “he preferred not to get the permits.”
Work commenced, but not to Field’s satisfaction. Although she ended up paying Farris $37,560.32, which was $1,266.50 more than she had been invoiced, Farris’ workmanship, according to her expert witness at trial, was “parallel to that of a second year high school shop student. Very fundamentals of construction were not followed.” On December 14, 2006, Field complained to Farris that the bathroom riles had been installed crookedly. At that, Farris stood and yelled to his workers, ‘That’s it. Pack it up boys,“ and walked off the job. Field left to complete errands, and came home at 7:00 P.M. She discovered that Farris had apparently returned and removed a sink, a toilet, bathroom pipes, a fan dimmer, lights (“slashed, yanked and left hanging with open wires”), and uninstalled shower fixtures. A lock in a side door had been tampered with. Later that night, at 11:00 P.M., Farris came back, “making a beeline for the side door.” He rattled the side door, and entered the garage. Field’s son and a houseguest began screaming, “He’s breaking down the garage doors!” Terrified, Field called the police, but she did not see Farris thereafter.
Field’s next communication from Farris was an invoice, dated the following day, for $18,258.10, which Farris conceded at trial was an erroneous figure. The invoice did not contain the agreed ten (10%) percent holdback. Nor did it account for the items he had taken from the home. As of that date, Field “couldn’t occupy a single room he had worked on.” Among other things, the back room had an unfinished floor, uninstalled laundry units and doors, and damaged walls; the bathroom (in addition to the crooked tiles) was missing baseboards, a sink, a usable toilet, shower and bathtub fixtures, and a proper electrical outlet the home office had uninstalled doors, an unfinished floor, and uncovered brick; the kitchen was left with just subflooring, nails sticking out, and unrepaired water streaks on the walls; and the exterior work was incomplete. Farris never provided a punch list. At trial, *275 Donald Lovering, a home inspector called by Field as an expert witness, testified that the cost to complete or repair Farris’ work was $41,483.00. David Ellis, a builder called as an expert at trial, estimated the cost of repairing the nighttime damage to the garage at $3,400.00.
The first time Farris ever asked for the Saab title was sometime in 2007, in a certified letter sent to Field. Field refused to provide it, treating the tide as a setoff against the financial losses she felt she had suffered due to Farris’ actions. She felt that she “had overpaid him, that “he had come back in the middle of the night and tried to gain entry” to her house, and that she was “outraged by his actions.”
In answer to Mass. R. Civ. P., Rule 49(a) special verdict questions at the conclusion of the trial, the jury found that Field had breached the covenant of good faith and fair dealing in her contract with Farris by failing to transfer the title for the Saab to Farris, but that such breach caused no monetary damages. The judge ordered the certificate of title to “be signed over and furnished ... forthwith.”[4] The jury also found that Farris had breached the contract with Field and caused Field to suffer damages as follows:
Please answer in figures: $16.000
Please answer in words: For completion of work
Finally, in addition to finding several G.L.c. 93A violations in answer to advisory questions, the jury found that Farris had caused damage to Field’s property:
Please answer in figures: $ 1.700
Please answer in words: Half of quote for door repair.
In subsequent written findings, the trial judge assessed damages against Fan-is for his G.L.c. 93A violations in the amount of double the damages awarded by the jury, plus attorney’s fees.
Farris argued in the trial court that the verdict was contrary to the judge’s instructions, that Field’s violation of her covenant of good faith and fair dealing in refusing to deliver the Saab certificate of title precluded her from being awarded damages, and that the trial judge should have corrected the verdict slip accordingly. The judge entered judgment according to the verdict, and Farris asserts error.
1. After outlining the elements of a breach of contract, the trial judge instructed the jury as follows:
In Massachusetts, there is an implied covenant of good faith and fair dealing between the parties of the contract. Implied covenant of good faith and fair dealing means that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits or the benefits of the contract. If the party seeking ...a claim for an alleged breach of contract against the other party has failed to act in good *276 faith and has breached the implied covenant of good faith and fair dealing, that party cannot recover for [a] subsequent breach of contract by the other party (emphasis added).
This was, as Farris concedes, a correct statement of the law. “Every contract implies good faith and fair dealing between the parties to it .’’ Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991), quoting Kerrigan v. City of Boston, 361 Mass. 24, 33 (1972). In turn, “[j]urors are presumed to follow the court’s instructions.” Yim v. Muszynski, 2001 Mass. App. Div. 243, 244. The jury found that Farris had suffered no monetary damages from Field’s breach and that his only damages consisted of the nondelivery of the certificate of title. Field’s decision not to give Farris the title occurred when he first requested it, several weeks after his abandonment of the work, which the jury concluded by its verdict to be a breach of Farris’ obligations. It was undisputed that, up to that point, Field thought that the title was in the folder of documents relating to the Saab and, until Farris left the job, would have given him the title had he asked for it. By any view of the evidence, all of the breaches of contract committed by Farris occurred before, not subsequent to, Field’s breach. The jury clearly followed the judge’s instructions.[5]
Additionally, the judge instructed the jury, “[I]f a party breaches a contract in a non-material or nonessential way, the injured party may be entitled ... to bring an action to the damages that he or she alleges to have suffered, but the party may not stop performing his obligations under the... contract or agreement between the parties.” Whether there is a material breach, that is, a breach of “an essential and inducing feature of the contract[],” Bucholz v. Green Bros. Co., 272 Mass. 49, 52 (1930), “normally is a question for the jury to decide.” Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 608-609 (2003), quoting Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 396 (1992). As noted, Field executed a bill of sale for the Saab and gave it to Farris. She gave him the car documents, the keys, and the car itself. All that was missing was the certificate of title, which he never demanded until well after the contractual relationship had ended. The record contains no evidence that once Farris discovered that he was without a title, he tried, with the documentation he had in hand, to apply to the registry of motor vehicles for a duplicate certificate of title under G.L.c. 90D, §14. The jury’s verdict implies a finding that Field’s breach was not material. On this point as well, the verdict conformed to the evidence and the judge’s instructions, and Field was properly awarded money damages.
2. Farris also claims that the judge should not have awarded double damages on Field’s G.L.c. 93A claim. The jury found, in answer to advisory questions, that Farris had abandoned or failed, without justification, to perform the contract; that he had failed to credit payment made by Field in connection with a residential contract; that he had violated building laws; and that the written contract form he had provided *277 failed in numerous respects to comply with statutory requirements.[6] All of these actions violated G.L.c. 142A, §17 and, in turn, G.L.c. 93A. The trial judge found that Farris’ abandonment and failure to secure permits “were deliberately undertaken by him after reflection by him,” and that his continued assertion that he was “not culpable, is not supported by any reasonable evaluation of the evidence.” Stated alternatively, the judge found that Farris’ actions were “willful or knowing” violations. G.L.c. 93A, §9(3). “Having heard the testimony, the judge was in the best position to evaluate the credibility of the witnesses.” Hawthorne’s, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 201 (1993). A judge’s finding of fact is binding on appeal, and “will not be deemed ‘clearly erroneous’ unless the appellate court on the entire evidence is left with the firm conviction that a mistake has been made.” Capitol Bank & Trust Co. v. Richman, 19 Mass. App. Ct. 515, 519 (1985). There was no error. The trial judge appropriately assessed double damages and attorneys fees against Farris. G.L.c. 93A, §9(3) and (4).
Judgment affirmed.
So ordered.

 The parties have proceeded on a record of proceedings pursuant to Dist/Mun. Cts. R A. D. A., Rule 8C, but no copies of the pleadings have been included in the record appendix. We rely on the statement of the case in Field’s brief. According to it, once the small claims action was transferred to the regular civil docket, Field’s counterclaim contained counts for breach of contract, negligence, violations of G.L.c. 142A (regulation of home improvement contractors), intentional infliction of emotional distress, conversion, damage to property, and violations of G.L.c. 93A, and Farris’ amended complaint alleged breach of contract, intentional infliction of emotional distress, conversion, damage to property, fraudulent misrepresentation, and tortious interference with good faith and fair dealing. All counts other than those submitted to the jury or retained by the court (G.L.c. 93A) were removed from the case by dismissal or directed verdict No error is asserted as to those rulings.

 In its answers to advisory questions, the jury found that the contract form offended G.L.c. 93A in various ways. See note 6, infra.

 She gave him the car, too, but he took his time removing it from her premises, despite her many requests that he do so.

 Field complied with this order.

 This fact is further demonstrated by the jury’s question to the trial court during its deliberations whether it could award damages to both parties if both bad breached the contract. The court, without objection, answered in the affirmative.

 With respect to the written contract form, the jury found that it had omitted the following: a clear and conspicuous notice that all contractors and subcontractors be registered with the administrator of home improvement contractors and that inquiries should be directed to the administrator, Farris’ registration number, and a notice in ten-point type or larger staling, “Do not sign this contract if there are any blank spaces.” The contract also failed to inform Field of the necessary permits required for the home project, that it was Farris’ obligation to obtain all building permits, and that homeowners who secured their own permits would be excluded from the statutory guaranty fund under G.L.c. 142A. The contract also bad numerous blank spaces regarding materials and fixtures. While finding ample justification for multiplying damages for Farris’ other acts, the trial judge ruled that there was no basis for multiplying damages solely on the basis of the deficiencies in the contract form.