**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

**BAP NO. MB 22-016**

**Bankruptcy Case No. 19-12419-JEB**

**ROWLEY SOLAR LLC,**
**Debtor.**

**BONNI BERKOWITZ, BARBARA BERKOWITZ, and**
**MAVEN REVOCABLE TRUST,**
**Appellants,**

**v.**

**INVALEON TECHNOLOGIES CORPORATION,**
**Appellee.**

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Frank J. Bailey, U.S. Bankruptcy Judge)[1]**

**Before**
**Lamoutte, Finkle, and Fagone,**
**United States Bankruptcy Appellate Panel Judges.**

**Michael B. Feinman, Esq. and Stephen P. Shannon, Esq., on brief for Appellants.**
**Joshua A. Burnett, Esq. and William J. Amann, Esq., on brief for Appellee.**

**May 9, 2023**

---

[1] The Honorable Frank J. Bailey rendered the decision that is the subject of this appeal. However, due to Judge Bailey's retirement, the case was reassigned to the Honorable Janet E. Bostwick in May 2022.

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

Bonni Berkowitz, Barbara Berkowitz, and Rowley Solar, LLC ("Rowley Solar") hired Invaleon Technologies Corporation ("Invaleon") to construct a solar array on their property. Disputes arose between the parties during the construction process. After Rowley Solar filed for bankruptcy, the parties settled their disputes through a court-approved settlement agreement, which provided for the release of the Berkowitzes' claims against Rowley Solar. When the Berkowitzes later filed proofs of claim in the bankruptcy case, Invaleon objected on the basis that the claims had been released. The Berkowitzes countered that the settlement agreement was voidable because they had been fraudulently induced to execute it.

Finding no fraud and deeming the settlement agreement valid, the bankruptcy court disallowed the claims. The Berkowitzes and their realty trust, Maven Revocable Trust ("Maven Trust"), appealed. For the reasons discussed below, we **DISMISS** Maven Trust's appeal for lack of appellate standing. Discerning no error by the bankruptcy court in disallowing the Berkowitzes' claims, we **AFFIRM**.

## BACKGROUND

### I.      Pre-Bankruptcy Construction of Solar Farm

Maven Trust owns real property located at 623 Wethersfield Street, Rowley, Massachusetts (the "Property"). Bonni Berkowitz and her mother, Barbara, resided at the Property. More than a decade ago, Bonni and Barbara formed Rowley Solar for the purpose of developing a solar farm on the Property. Bonni and Barbara were the sole members of Rowley Solar.

In 2018, to obtain construction financing, Rowley Solar entered into a Membership Interest Purchase Agreement (the "MIPA") with Invaleon, whereby Invaleon agreed to acquire

2

Rowley Solar's membership interests and assume all construction and operation costs for the solar farm. Invaleon agreed to pay $949,640 in three installments based on the project reaching certain milestones: the first was payable at closing, the second upon the project reaching "mechanical completion" (meaning the solar array was capable of producing power but was not yet connected to the power grid), and the third upon receiving "permission to operate" from the municipality. In return, Rowley Solar was obligated to assign its membership interests to Invaleon. The first installment of the purchase price was remitted by Invaleon to the Berkowitzes, but no assignment agreement was ever executed or delivered.

Invaleon installed the solar array, and on February 21, 2019, an engineer issued a "certificate of mechanical completion." Invaleon, however, did not pay the second installment (or the third) because it had not received an assignment of the membership interests. Invaleon requested the same from the Berkowitzes, but they refused, insisting they were not obligated to assign the membership interests until all payments under the MIPA were made. They also complained about the work performed by Invaleon and its conduct at the project site.

During the spring of 2019, Invaleon, the Berkowitzes, and Rowley Solar attempted, unsuccessfully, to resolve their dispute. Eventually, Invaleon sued the Berkowitzes in state court and then, on July 7, 2019, Maven Trust served a Notice of No Trespass prohibiting Invaleon from entering the Property "at any time for any reason," indefinitely.

## II.     The Bankruptcy Proceedings

### A.     Invaleon's Motion to Dismiss and Related Objections

Ten days later, Rowley Solar filed a chapter 11 petition. Invaleon moved to dismiss the case on the theory that the Berkowitzes lacked the authority to sign and file a petition for

Rowley Solar. Both Rowley Solar and the Berkowitzes objected, arguing there had been no transfer of the membership interests.

B. **The Settlement Agreement and Sale of Rowley Solar's Assets**

Negotiations between the parties resumed and about a month later, Rowley Solar, the Berkowitzes, and Invaleon executed a Stipulation of Settlement (the "Settlement Agreement"). Maven Trust was not a party to the agreement. The Settlement Agreement: (1) obligated Rowley Solar to sell substantially all its assets; (2) provided for a distribution of the bulk of the sale proceeds to Invaleon; (3) required Invaleon to pay $75,000 to the Berkowitzes "as full satisfaction" of their claims against Rowley Solar and Invaleon; and (4) required Invaleon to pay "all allowed claims" in the bankruptcy case. Invaleon was expressly prohibited from bidding on Rowley Solar's assets. If, however, the successful bidder failed to close, Invaleon would be deemed the successful bidder for a purchase price which included payment of $656,000 to the Berkowitzes. In such an event, the parties agreed to employ "a mutually satisfactory third party manager such that neither [Invaleon] nor any of its employees [would] be present or be required to be present on the premises."

Thereafter, the bankruptcy court approved the Settlement Agreement and authorized Rowley Solar to sell its assets to the successful bidder, PowerFund 1, LLC ("PowerFund"). Shortly after the sale closed, Invaleon entered the project site several times at PowerFund's request.

III. **The Disallowance of the Berkowitzes' Proofs of Claim**

A. **The Berkowitz Parties' Proofs of Claims and Invaleon's Objection**

At some point after the Settlement Agreement had been approved, the Berkowitzes filed proofs of claim totaling about $327,000, based primarily on pre-petition loans to Rowley Solar.

4

Maven Trust also filed a proof of claim for about $320,000, based on "[e]stimated contingent liability for complying with permits."

Invaleon filed an objection to these claims (the "Claims Objection"), arguing they should be disallowed because the Berkowitzes and Maven Trust had received $75,000 under the Settlement Agreement "as full satisfaction" of their claims against Rowley Solar and had released the balance of their claims. The Berkowitzes responded that they should not be bound by the Settlement Agreement because they were induced to execute it by Invaleon's fraudulent representations that the solar farm was "mechanically complete" and that Invaleon would have no further involvement with the project and would not appear at the project site. These representations were "materially false," they argued, as evinced by Invaleon's post-sale presence at the project site and evidence reflecting that the mechanical completion certificate was "false." Had they known Invaleon's representations were false, the Berkowitzes claimed, they would never have entered into the Settlement Agreement. The Berkowitzes also asserted that, although they "had every financial incentive" for Invaleon to become the successful bidder, because Invaleon would have to pay them the $656,000 owed under the MIPA, they decided to forfeit the money because they "did not want [Invaleon] as their neighbor or tenant." They also argued that Maven Trust was not a party to the Settlement Agreement and had not released its claims against the estate.

**B.    The Trial**

The bankruptcy court conducted a two-day trial on the Claims Objection in April 2022. Bonni Berkowitz and Kangkui "Tom" Wu, Invaleon's chief executive officer, were among those who testified.

5

### 1. Bonni Berkowitz's Testimony

Bonni testified that the parties negotiated the Settlement Agreement at a meeting on September 5, 2019, at the law offices of Riemer & Braunstein, Rowley Solar's bankruptcy counsel. She stated that Invaleon first proposed to pay the Berkowitzes the $656,000 owed under the MIPA so Invaleon could continue to own and operate the project, but they rejected that proposal because they "need[ed] to be rid of Invaleon" and "did not want them on [their] property ever again." When asked whether anything else "was discussed about Invaleon staying on the premises," Bonni responded:

> Just the no-trespass order, that they [(Invaleon)] would never be involved with the project, . . . or step on the property again. And then when we got to the point of outlining . . . the bidder for the property, they [(Invaleon)] were excluded from being a bidder firsthand. But if they did become a bidder . . . they could not come on the property, . . . there had to be a third party operator that was approved by us, collectively, and they would have nothing to do with stepping onto our farm again. . . . And they would have to pay us the $656,000 they owed us and never paid us.

She explained that she was "satisfied that Invaleon was never going to be back on the property. That was the reason we were there. That was the reason we didn't accept [$]656,000 initially, when we were at that meeting, on the 5th of September. It was . . . what we paid to, frankly, get rid of Invaleon." When asked what else was discussed at the meeting, Bonni stated that Tom Wu, through counsel, "said the plant was all set, it was ready to go, it was all set to produce power, it was mechanically complete, the permits were all set . . . ."

Bonni stated that after the closing of the sale to PowerFund, she observed Invaleon's trucks on the Property at least twice. Then, she said, there was "extraordinary pressure" from PowerFund to allow Invaleon on the project site. She stated: "[W]e did everything we could do to get rid of Invaleon forever, from stepping foot on our property. And here we [we]re, still dealing with Invaleon at all hours of the day and night." She stated the parties ultimately agreed

to a "one-time exemption for a very short period of time for a representative from Invaleon to go onto the property . . . ."

### 2. Tom Wu's Testimony

Tom Wu testified that he was introduced to the Berkowitzes by a "broker," and he understood that, because a power purchase agreement was already in place, the solar project was "very valuable" and would be appealing to a buyer. He stated that, due to strict deadlines relating to preservation of valuable tax credits, it was "critical" for Rowley Solar to "get an investor to buy in to the project so that it would be funded" and construction completed within the prescribed timeframe. Invaleon offered to fund the project by purchasing Rowley Solar's membership interests through the MIPA.

Turning to the meeting during which the terms of the Settlement Agreement were negotiated, Wu stated that it was conveyed to him that selling Rowley Solar's assets "was the most pressing matter at hand" due to the "critical deadlines in preserving the S-racks [sic], the tax credits, [and] the permits," and that they had a stalking horse bidder and just needed the parties to "agree on the terms of the sale." When asked whether there were any discussions about "mechanical completion" or "project readiness," Wu indicated he was asked no questions and he made no statements on that topic.

Wu also acknowledged that during contract negotiations, he "understood" the Berkowitzes did not want Invaleon on the project site again and that this was acceptable to Invaleon. When asked whether he "understood" that "the Berkowitzes were willing to give up $656,000 [which they were owed under the MIPA] just to get [Invaleon] off their property," Wu responded, "Sure. Yes."

Wu was also questioned about specific terms of the Settlement Agreement designed to limit Invaleon's future involvement in the project:

Q. . . . In terms of the stipulation, under paragraph 1, starting here: "The parties agree that Invaleon or affiliates of Invaleon should not bid on the purchased assets or membership interests." Did I read that correctly?

A. You did, yes.

Q. . . . [A]nd that's consistent with your understanding that the Berkowitzes did not want Invaleon on that project at all. They didn't want you there at all[,] did they?

A. That is correct.

Q. . . . And in fact, we know that they didn't want you there at all because previously they had issued a no trespass order to you. Correct?

A. That is correct.

. . . .

Q. . . . [The Settlement Agreement] says that if . . . Invaleon ends up being the "successful bidder," . . . that everybody has to find a mutually agreeable third-party manager so that Invaleon doesn't have to be on the premises. Correct?

A. That is correct, yes.

Q. . . . You understood that was, again using your term, the overarching theme that Invaleon was not to appear on the property at all. Right?

A. That is correct. Yes.

Finally, when questioned about Invaleon's presence on the project site shortly after the sale, Wu responded: "It was . . . our understanding that it was a requirement for us to assist the successful bidder in a familiarizing with the site and helping them . . . and turning the keys over."

### 3. Post-Trial Filings and Closing Arguments

After trial, the parties submitted proposed findings and conclusions. The bankruptcy court heard closing arguments, and then took the matter under advisement.

**IV.     The Claims Order and Opinion**

On April 18, 2022, the bankruptcy court entered an order and opinion (the "Claims Order"): (1) overruling Invaleon's objection to Maven Trust's claim and allowing that claim; and (2) sustaining the objection as to the Berkowitzes' claims and disallowing those claims.

The bankruptcy court ruled that Maven Trust's proof of claim was filed in accordance with the Bankruptcy Rules and consequently "enjoy[ed] prima facie validity," and that there was no evidence that Maven Trust—not a party to the Settlement Agreement—had released its claim.

As to the Berkowitzes, the bankruptcy court rejected their argument that they were fraudulently induced to execute the Settlement Agreement and should not be bound by it, as well as their alternative argument that they were entitled to damages in the amount of their claims due to Invaleon's alleged breach of the Settlement Agreement.

The court found the Berkowitzes had not satisfied their burden of establishing a material misrepresentation. The court emphasized that the Berkowitzes had "identified only one allegation of fraud on which they [we]re relying: their allegation that they were induced to enter into the Settlement Agreement by a false promise by Wu, on behalf of Invaleon, that Invaleon would never again set foot on the project site." It found, however, that the Settlement Agreement included no such promise or agreement by Invaleon. The court articulated three bases for this finding. First, the court stressed that "no such term or promise appears in the writing that constitutes the Settlement [Agreement]." The court recognized that the Settlement Agreement did not include an integration clause and therefore it was possible that the term was agreed to but not included in the written agreement. It found, however, "by a preponderance of the evidence that, had this term been negotiated and agreed upon, it would have appeared in writing in the Settlement [Agreement]." Second, the court found the Berkowitzes had "no need

9

for the prohibition and promise in question because they already had the no trespass order" and such a term "would have been redundant." Third, the court stated, there was "simply no evidence that Wu, for Invaleon, agreed to this term or made this promise orally or in any manner. No such term was ever negotiated or agreed upon." The court noted that "Wu, for Invaleon, understood that the Berkowitzes strongly desired that Invaleon never come onto the project site again" and "[t]his desire clearly did inform how the [parties] dealt with the contingency of Invaleon's becoming the owner of the project." But, the court emphasized, the parties did not address other possible scenarios in which Invaleon "might need or want to come onto the property," such as to assist a third-party buyer with its operation, maintenance, or completion of the project. "The fact that the Berkowitzes had made their position clear," the court stated, did not mean that Invaleon made a promise that it would never enter the project site again for any reason.

The bankruptcy court also rejected a fraud in the inducement claim based on representations made by Wu during negotiations that the project was "mechanically complete" and ready to be turned on. The bankruptcy court explained that, although there was "considerable evidence" that the engineer had issued a certificate of mechanical completion without having performed the necessary inspection, the Berkowitzes had failed to establish that the project was *not*, in fact, mechanically complete or that Wu's representations regarding mechanical completion were false. The court further found the Berkowitzes had failed to prove that they relied on Wu's representations regarding mechanical completion when entering into the Settlement Agreement. The bankruptcy court concluded, therefore, that the Berkowitzes had "failed to show fraud in the inducement."

10

The bankruptcy court also rejected the Berkowitzes' alternative argument that Invaleon breached the Settlement Agreement by entering the project site after the sale and that they were entitled to damages in the amount of their claims for that breach. Because the Settlement Agreement did not contain a requirement that Invaleon stay off the Property, the court determined that Invaleon had not violated the Settlement Agreement by entering the Property.

## V.      The Appeal

This appeal followed. On appeal, the Berkowitzes challenge the bankruptcy court's factual finding that Invaleon did not agree to stay off the Property, stating there was "substantial" evidence in the record that such a promise was made. They also challenge the bankruptcy court's finding that they did not reasonably rely on promises made by Invaleon, insisting their reliance was "reasonable" because the "main reason for the [Settlement Agreement] . . . was to be rid of" Invaleon. Invaleon counters that, other than Bonni Berkowitz's own testimony, the record is devoid of any evidence demonstrating that Invaleon promised or agreed to not enter the project site ever again for any reason.

## VI.     Dismissal of the Bankruptcy Case

While this appeal was pending, the bankruptcy court dismissed Rowley Solar's bankruptcy case for cause under § 1112(b)(4). Neither party has raised any mootness issues arising from the dismissal.

<u>**APPELLATE JURISDICTION**</u>

We have jurisdiction to hear appeals from final orders of the bankruptcy court. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020). Although the Claims Order qualifies as a final order because it "finally dispose[d]" of all the material issues pertaining to this "discrete dispute," see Bullard v. Blue Hills Bank,

575 U.S. 496, 501 (2015), we must also consider whether lack of appellate standing or mootness deprives us of jurisdiction to hear this appeal or any part of it.

## I.   Standing

This appeal was filed jointly by Bonni Berkowitz, Barbara Berkowitz, and Maven Trust. The Claims Order, however, disallowed only the Berkowitzes' claims.  Because the Claims Order overruled Invaleon's objection to Maven Trust's claim and allowed that claim in its entirety, and as there is nothing in the record to suggest that the disallowance of the Berkowitzes' claims caused any direct, pecuniary harm to Maven Trust, we conclude that Maven Trust was not aggrieved by the Claims Order and thus lacks standing to appeal.  See In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir. 1987) (stating that standing to appeal from a final bankruptcy court order is accorded only to "'persons aggrieved,' i.e., to those persons whose rights or interests are 'directly and adversely affected pecuniarily' by the order") (citations omitted); see also Elkin v. Metro. Prop. & Cas. Ins. Co. (In re Shkolnikov), 470 F.3d 22, 24 (1st Cir. 2006) ("It is an abecedarian rule that a party cannot prosecute an appeal from a judgment in its favor.") (citations omitted).  This appeal is, therefore, dismissed as to Maven Trust for lack of standing.

## II.   Mootness

Although not raised by the parties, we also consider whether the dismissal of the underlying bankruptcy case raises any mootness concerns, as mootness also will "deprive us of jurisdiction."  See La Trinidad Elderly LP SE v. Loíza Ponce Holdings LLC (In re La Trinidad Elderly LP SE), 627 B.R. 779, 794 (B.A.P. 1st Cir. 2021) (quoting Melo v. GMAC Mortg., LLC (In re Melo), 496 B.R. 253, 256 (B.A.P. 1st Cir. 2013)).

"Mootness is a jurisdictional defect, rooted in Article III case or controversy considerations."  Horizon Bank & Tr. Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004)

(citation omitted).  "A case is moot when the issues are no longer live or the parties no longer have a legally cognizable interest in the outcome."  Id.; see also MOAC Mall Holdings LLC v. Transform Holdco LLC, 143 S. Ct. 927, 935 (2023) (discussing Chafin v. Chafin, 568 U.S. 165, 172 (2013), and stating that "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision") (citation and internal quotation marks omitted); Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 191 (1st Cir. 2022) (also discussing Chafin, 568 U.S. at 172).  Stated differently, "a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party."  Horizon Bank & Tr. Co., 391 F.3d at 53 (citing Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)); see also Chafin, 568 U.S. at 172. "A prime example is when the issue on appeal is directly related to an underlying bankruptcy case and the underlying case is itself dismissed."  Sundaram v. Briry, LLC (In re Sundaram), 9 F.4th 16, 21 (1st Cir. 2021) (citations omitted).  If, however, "the issue on appeal is merely ancillary to the bankruptcy," the appeal will not be rendered moot by the dismissal of the underlying bankruptcy case.  Id. (citing, among others, Dahlquist v. First Nat'l Bank in Sioux City (In re Dahlquist), 751 F.2d 295, 298 (8th Cir. 1985) (stating that issue is "ancillary" if it is not "directly related to any decision by the Bankruptcy Court in reorganizing the estate")).

Given the circumstances presented in this appeal, we conclude that we could afford the Berkowitzes effective relief by reversing the Claims Order, which would allow them to pursue their rights under the Settlement Agreement to seek payment of their claims from Invaleon (even though there is no longer a bankruptcy estate from which they could seek payment).  While this conclusion is not entirely free from doubt, the parties have not raised mootness as an issue and

13

the policy favoring adjudication of disputes on the merits tilts the needle toward a determination that this appeal is not moot.

## STANDARDS OF REVIEW

"In reviewing a decision disallowing a claim in a bankruptcy case, [appellate courts] review the court's legal conclusions de novo and findings of fact for clear error." Díaz Mayoral v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 998 F.3d 35, 40 (1st Cir. 2021) (citations omitted). We review the bankruptcy court's legal determination that the Berkowitzes' claims had to be disallowed under § 502 de novo.

Here, however, the Berkowitzes argue that the bankruptcy court's disallowance of their claims was based on certain erroneous factual findings. We review those factual findings for clear error. See Nevor v. Moneypenny Holdings, LLC, 842 F.3d 113, 117 (1st Cir. 2016) ("In the aftermath of a bench trial, we review the [trial] court's factual findings for clear error.") (citation omitted). A finding of fact "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

## DISCUSSION

### I.     The Legal Framework Governing the Filing and Allowance of Claims

"Sections 501 and 502 govern the filing and allowance of creditor claims in bankruptcy proceedings." Am. Express Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 502 (B.A.P. 1st Cir. 2009) (citing Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443 (2007)). Section 501(a) allows a creditor to assert a claim in a bankruptcy case by filing a proof of claim. 11 U.S.C. § 502(a). "When a proof of claim is filed under [§] 501, the claim 'is

deemed allowed, unless a party in interest . . . objects.'" In re Russell, No. 22-10083, 2023 WL 320983, at *1 (Bankr. D. Me. Jan. 19, 2023) (quoting 11 U.S.C. § 502(a)). "But even where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)." Travelers, 549 U.S. at 449 (quoting 11 U.S.C. § 502(b)). "The first of those nine exceptions provides that a claim is not to be allowed if it is 'unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]'" In re Russell, 2023 WL 320983, at *1 (quoting 11 U.S.C. § 502(b)(1)). "The Supreme Court has recognized the statutory presumption that 'claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed' under [§] 502(b)." Id. (quoting Travelers, 549 U.S. at 452).

"Sections 501 and 502 are complemented by Fed. R. Bankr. P. 3001, which provides 'the procedural framework for the filing and allowance of claims' . . . ." Id. at *2 (quoting In re Plourde, 418 B.R. at 503). Bankruptcy Rule 3001(f) states that a properly executed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "Once presumptive validity is established, the burden rests on the [objecting party] to refute the validity or the amount of the claim with 'substantial evidence.'" In re Russell, 2023 WL 320983, at *2 (quoting Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993)). If the objecting party produces "substantial evidence" in opposing a proof of claim, "[t]he burden then shifts to the claimant to prove his or her claims by a preponderance of the evidence." Iatrou v. Darr (In re Iatrou), No. 20-40112-DPW, 2022 WL 220323, at *7 (D. Mass. Jan. 25, 2022) (citation omitted).

15

In evaluating whether the bankruptcy court erred in disallowing the Berkowitzes' claims, we must consider whether it erroneously rejected their challenges to the enforceability of the Settlement Agreement based on fraud in the inducement and breach of contract.

## II. The Bankruptcy Court Did Not Err in Rejecting the Berkowitzes' Fraud in the Inducement Defense

To determine whether the Settlement Agreement was enforceable against the Berkowitzes, we look to applicable state law principles regarding the formation and validity of contracts. See Butner v. United States, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). Although the Settlement Agreement does not contain a choice of law provision, there is no dispute that Massachusetts law applies. We turn, therefore, to Massachusetts contract law.

### A. Basic Principles of Massachusetts Contract Law

In Massachusetts, "[a]bsent an ambiguity, the court interprets a contract according to its plain terms, in a manner that gives reasonable effect to each of its provisions." Weiss v. DHL Express, Inc., 718 F.3d 39, 45 (1st Cir. 2013) (citations and internal quotation marks omitted). Here, the plain terms of the Settlement Agreement included a release of the Berkowitzes' claims against the bankruptcy estate and did not contain a provision that Invaleon would refrain from entering the project site again. Instead, the Berkowitzes argue that the Settlement Agreement was invalid because they were fraudulently induced to enter it by a *verbal* promise by Wu, on behalf of Invaleon, during contract negotiations.

### B. Fraud in the Inducement

Fraud in the inducement "concern[s] the validity of the formation of the contract . . . ." Berwind Prop. Grp. Inc. v. Env't Mgmt. Grp., Inc., No. 04-11411-NMG, 2007 WL 4707647, at *3 (D. Mass. Feb. 5, 2007) (applying Massachusetts contract law). If the Berkowitzes were

fraudulently induced to enter into the Settlement Agreement, then it was voidable, and they were not bound by its terms.  See id. (stating that "contracts induced by fraudulent misrepresentations . . . are voidable at the election of the party who justifiably relied on the misrepresentations") (citation omitted); see also Griffin v. Coghill, No. 17-cv-11619-IT, 2018 WL 1122361, at *7 (D. Mass. Mar. 1, 2018) ("A party who has been fraudulently induced by the defendant into entering a contract can rescind that contract.") (citing Shaw's Supermarkets, Inc. v. Delgiacco, 575 N.E.2d 1115, 1117 (Mass. 1991)).

In Massachusetts, the elements required to prove fraud in the inducement are: (1) "misrepresentation of a material fact"; (2) "made to induce action"; and (3) "reasonable reliance on the false statement to the detriment of the person relying." Com. Bank & Tr. Co. v. Hayeck, 709 N.E.2d 1122, 1126 (Mass. App. Ct. 1999) (citation omitted).

### C.      Misrepresentation of a Material Fact

As to the first element—misrepresentation of a material fact—the Berkowitzes argue that Wu made a fraudulent promise during contract negotiations that Invaleon would refrain from entering the project site again.[2]

### 1.      Promise of Future Conduct

"Massachusetts law clearly states that statements of present intention as to future conduct may be the basis for a fraud action if . . . the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage." McEvoy Travel Bureau, Inc. v. Norton Co., 563 N.E.2d 188, 192 (Mass. 1990) (citations omitted).  Therefore, "for a promise [regarding future conduct] to constitute fraud in the inducement, the promisor

---

[2]  Although the Berkowitzes also argued in the proceedings below that Invaleon made false representations that the project was "mechanically complete," they do not challenge the bankruptcy court's findings and rulings on that issue.  Therefore, we only discuss the allegedly fraudulent promise to refrain from entering the project site.

17

must intend not to carry out the promise and this intent must exist at the time the promise is made." Coastal Energy, Inc. v. R.W. Granger & Sons, Inc., No. 96-1019, 1998 WL 1184106, at *3 (Mass. Super. Ct. Jan. 28, 1998) (citing McCartin v. Westlake, 630 N.E.2d 283, 289 n.11 (Mass. App. Ct. 1994)). "Mere evidence that a promise was not performed is insufficient to prove intent." Michelle Holdings, LLC v. Johnston, No. 19-P-1444, 2021 WL 117119, at *3 (Mass. App. Ct. Jan. 13, 2021) (citations omitted).

### 2. Review of the Record

To demonstrate the existence of Wu's alleged promise to stay off the project site, the Berkowitzes point to two provisions of the Settlement Agreement—one which prohibited Invaleon from bidding at the sale of Rowley Solar's assets and another providing that, in the event Invaleon became the owner of the solar array by default, the parties would employ a third-party manager to operate the solar farm "such that neither [Invaleon] nor any of its employees shall be present . . . on the premises." While these provisions are consistent with, and clearly reflect, the Berkowitzes' well-documented desire that Invaleon have no future involvement in the operation of the solar project, they do not constitute an express promise or agreement by Invaleon to not enter the project site *ever again for any reason*. We agree with the bankruptcy court that the Settlement Agreement is, on its face, devoid of such a promise or agreement.

The Berkowitzes also highlight Bonni Berkowitz's testimony as evidence that the parties agreed Invaleon would refrain from entering the project site. Specifically, they point to Bonni's testimony that the Berkowitzes rejected Invaleon's first proposal to pay the monies owed under the MIPA to continue to operate the solar project, because they "did not want [Invaleon] on [thei]r property ever again." Bonni explained that they essentially forfeited the $656,000 they were owed under the MIPA "to get rid of Invaleon." The Berkowitzes also point to Bonni's

testimony that the parties "discussed" the "no-trespass order, that [Invaleon] would never be involved with the project . . . or step on the property again." Bonni's testimony is compelling evidence of the Berkowitzes' desire that Invaleon have no further involvement in the solar project. However, *discussing* a potential contract term is not the same as *agreeing* upon the term. There is no testimony in the record, by Bonni or anyone else, that the parties actually *negotiated*, or that Invaleon actually *agreed* to, a contract term not contained in the written Settlement Agreement that Invaleon would not enter the project site again for any reason. Noticeably absent from the witness list was Attorney Edmond Ford, who represented the Berkowitzes during the contract negotiations. Although both Bonni and Wu testified that all communications and proposals between the parties were exclusively presented through their attorneys, the Berkowitzes did not introduce testimony from Attorney Ford that the alleged term was actually negotiated by the parties and agreed upon by Invaleon.

Nor is there any other evidence in the record to corroborate the Berkowitzes' claims that such a promise was made. Nothing Wu stated at trial or at his deposition could reasonably be interpreted as establishing an absolute promise or agreement to never enter the project site again for any reason. Wu was asked many times whether he "understood" that the Berkowitzes did not want Invaleon on the project site again, and he agreed that was the "overarching theme" of the negotiations. But he never stated that he *promised* or *agreed* Invaleon would not enter the site again under any circumstances. Further, even if the record demonstrated that Wu had made such a promise, the Berkowitzes still could not satisfy the misrepresentation element of their fraud in the inducement defense as there was no evidence that Wu did not intend to honor such a promise at the time it was made. See McMillen v. Kadis (In re McMillen), 390 B.R. 1, 8 (Bankr. D. Mass. 2008) (concluding there was no fraud in the inducement where evidence failed to show

19

the promisor did not intend to honor his promise to pay at the time the promise was made). Again, mere nonperformance is insufficient to establish such an intent. See Michelle Holdings, LLC, 2021 WL 117119, at *3.

### 3. No Reversible Error

That the Berkowitzes wanted no further involvement with Invaleon is clear—so much so that they were willing to forego the monies owed to them in order to achieve that goal. Even if we might have weighed the evidence differently, however, the bankruptcy court's finding that there was no binding promise or agreement by Invaleon to stay off the Property in the future was "plausible" based on the entire record before the bankruptcy court. See Devila Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 505-06 (B.A.P. 1st Cir. 2005). Affording the bankruptcy court the "due deference" to which it is entitled when weighing the evidence, see Fed. R. Civ. P. 52(a)(6), we are not "left with the definite and firm conviction that a mistake has been committed." U.S. Gypsum Co., 333 U.S. at 395. We discern no error in the bankruptcy court's determination that an essential element of fraudulent inducement—a false statement of material fact—was lacking. Because the Berkowitzes' fraudulent inducement claim falters on the first element, we need not address their arguments regarding reasonable reliance. See Hayeck, 709 N.E.2d at 1126 (requiring all elements to be established to prevail on fraud in the inducement defense).

### III. The Bankruptcy Court Did Not Err in Rejecting the Berkowitzes' Breach of Contract Claim

We turn now to the Berkowitzes' alternative claim that Invaleon breached the Settlement Agreement by entering the project site after the sale and that they were entitled to damages in the amount of their claims for that breach.

To prevail on a claim for breach of contract under Massachusetts law, the plaintiff must demonstrate that: (1) "there was an agreement between the parties"; (2) "the agreement was supported by consideration"; (3) "the plaintiff was ready, willing, and able to perform his or her part of the contract"; (4) "the defendant committed a breach of the contract"; and (5) "the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016). "An agreement is breached when a party to the agreement, without legal excuse, fails to comply with a material term of the agreement." Amcel Corp. v. Int'l Exec. Sales, Inc., No. 93-11128-RCL, 1997 U.S. Dist. LEXIS 23543, at *23 (D. Mass. Sep. 26, 1997) (citing Realty Developing Co. v. Wakefield Ready-Mix Concrete Co., 100 N.E.2d 28, 30 (Mass. 1951)).

The Berkowitzes' breach of contract claim was based on an alleged agreement between the parties that Invaleon would never enter the project site again under any circumstances. As stated previously, it is undisputed that the Settlement Agreement contains no such provision. Further, the bankruptcy court found that no verbal agreement between the parties was made during contract negotiations. Having concluded that this finding was not clearly erroneous, it necessarily follows that the bankruptcy court did not err in ruling that, in the absence of such an agreement between the parties, there was no breach of a material term. Because the Berkowitzes did not establish an agreement to refrain from entering the project site, let alone any breach of a material contract term by Invaleon, they were not entitled to damages, and the bankruptcy court did not err in disallowing their claims.

In sum, because the bankruptcy court correctly rejected both the Berkowitzes' fraud in the inducement defense and breach of contract claim, we conclude that the bankruptcy court did not commit reversible error in disallowing the Berkowitzes' claims.

21

## CONCLUSION

For the reasons discussed above, we **DISMISS** Maven Trust's appeal for lack of standing. As to the Berkowitzes' appeal, we conclude that they have not shown the bankruptcy court's disallowance of their claims to be a result of a clearly erroneous factual finding or an error of law. Therefore, we **AFFIRM** the Claims Order to the extent that it disallowed the Berkowitzes' claims.