NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12296


TZE-KIT MUI  vs.  MASSACHUSETTS PORT AUTHORITY.



Suffolk.     November 6, 2017. - January 29, 2018.

Present:  Gants, C.J., Gaziano, Budd, & Cypher, JJ.


Massachusetts Wage Act.  Massachusetts Port Authority.  Public
    Employment, Sick leave benefits.




Civil action commenced in the Superior Court Department on
October 17, 2014.

The case was heard by Robert B. Gordon, J., on motions for
judgment on the pleadings.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Laurie F. Rubin for the defendant.
Kevin C. Merritt for the plaintiff.
David J. Fried, for Massachusetts Employment Lawyers
Association, amicus curiae, submitted a brief.


BUDD, J.  The plaintiff, Tze-Kit Mui, sued his former

employer, Massachusetts Port Authority (Massport or agency),

alleging that Massport failed to timely compensate him for his

accrued, unused sick time under the Wage Act, G. L. c. 149,

§§ 148, 150 (Wage Act or act).  A Superior Court judge allowed Mui's motion for judgment on the pleadings.  Massport appealed, and we transferred the case here on our own initiative.  Because we conclude that payment for accrued, unused sick time (sick pay) does not count as "wages" under the act, we vacate the judgment and remand the matter to the Superior Court.[1]

Background.  In 2013, Massport initiated disciplinary proceedings against Mui, a longtime employee.[2]  One week later, he applied for retirement.  Massport's employees' retirement system set Mui's retirement date retroactively, despite the fact that the disciplinary proceedings had not been resolved.  Several weeks later, Massport discharged Mui for cause.[3]  The termination was subsequently overturned pursuant to a grievance procedure.[4]

Under Massport's sick pay policy, eligible employees receive payment for a percentage of the value of their accrued,

---

[1] We acknowledge the amicus brief submitted by the Massachusetts Employment Lawyers Association.

[2] The disciplinary proceedings were in connection with Tze-Kit Mui having been charged with arson and several counts of attempted murder as a result of actions he took during a suicide attempt.

[3] Mui later pleaded nolo contendere to the lesser charges of wanton destruction of property over $250 and threat to commit a crime.

[4] The arbitrator determined that, notwithstanding the reason for the termination, it was not possible to discharge an employee who had already retired.

unused sick time upon separation from the agency.[5]  Employees who are discharged for cause are not eligible for sick pay.

Prior to the completion of the grievance process, Massport's position was that because the agency initiated disciplinary proceedings against Mui by suspending him prior to his application for retirement, and then terminated him (an action that was later reversed), he was not entitled to any sick pay.  Once the arbitrator ruled that Massport could not terminate Mui because he had already retired, the agency paid the value of Mui's accrued sick time pursuant to its policy. Because of the grievance proceedings, however, the payment was made over one year later than Mui's effective retirement date.[6]

Mui brought suit against Massport, claiming that the agency violated the Wage Act by failing to compensate him for his accrued, unused sick time within the time frame mandated by the act.  The Superior Court judge agreed and allowed Mui's motion for judgment on the pleadings.  This appeal followed.

Discussion.  Originally enacted in 1879, the purpose of the Wage Act is "to protect employees and their right to wages."

---

[5] The percentage an employee receives depends upon when the employee began at the agency and the length of his or her tenure there.  Under the policy, employees who remain with Massachusetts Port Authority (Massport) until retirement or death, and employees who accrued sick time prior to 2007, receive higher rates of compensation.

[6] At the time of his retirement, Mui had accrued 2,232 hours of sick time, for which Massport paid him $46,755.41.

Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 70 (2009). Among other things, the Wage Act requires the payment of wages on a weekly or biweekly basis. The act provides that "any employee leaving his [or her] employment shall be paid in full on the following regular pay day," and that "any employee discharged from . . . employment shall be paid in full on the day of his discharge . . . the wages or salary earned by him." G. L. c. 149, § 148. Violations of the act result in strict liability and treble damages in the civil context, as well as potential criminal liability. G. L. c. 149, §§ 27C, 148, 150. Mui argues that because his sick pay, as wages under the act, was not paid to him until well after he separated from Massport, the agency violated the act (and, thus, owes him treble damages).

Whether the Wage Act encompasses sick pay is a question of statutory interpretation requiring de novo review. Commonwealth v. Martin, 476 Mass. 72, 75 (2016). Our analysis begins with the plain language of the statute, which is the "principal source of insight into legislative intent." Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010), quoting Providence & Worcester R.R. v. Energy Facilities Siting Bd., 453 Mass. 135, 142 (2009).

The act does not define "wages" per se, but does state that "'wages' shall include any holiday or vacation payments due an

employee under an oral or written agreement." G. L. c. 149, § 148. Additionally, the term encompasses "commissions when the amount of such commissions . . . has been definitely determined and has become due and payable to [the] employee." Id.

Notably, the act does not mention sick pay. Certainly, the absence of an explicit reference to sick pay in the statute does not end our inquiry. "The word 'include' in a statute generally signals that entities not specifically enumerated are not [necessarily] excluded." 2A N.J. Singer & S. Singer, Statutes and Statutory Construction § 47:25 (7th ed. rev. 2014). See Federal Election Comm'n v. Massachusetts Citizens for Life, Inc., 769 F.2d 13, 17 (1985), judgment aff'd, 479 U.S. 238 (1986) (noting use of word "include" means list is not exclusive).

However, ordinarily we will not add language to a statute where the Legislature itself has not done so. See Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 9 (1998) (court will not add language to statute that Legislature could have, but did not, include). Further, we have previously declined to expand the meaning of "wages" under the act to other types of compensation not expressly mentioned in the statute. See, e.g., Weems v. Citigroup, Inc., 453 Mass. 147, 155-156 (2009) (discretionary bonuses not considered wages); Boston Police Patrolmen's Ass'n, Inc. v. Boston, 435 Mass. 718, 720-721

(2002) (tax-exempt deferred compensation not considered wages). See also Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 603-605 (2003) (severance pay not considered to be wages where payment was contingent upon circumstances of separation).  Upon review, we discern no reason to conclude that the Legislature intended to include sick pay as "wages" under the Wage Act.

Like vacation time, sick time is often accrued as one works for an employer.  However, unlike vacation time, which can be used for time away from work for any reason, sick time is to be used only when the employee or a family member is ill.  See G. L. c. 149, § 148C (a) (defining sick time).  Thus, because its usage is conditional, i.e., employees do not have an absolute right to spend down their sick time, employees are not typically compensated for accrued, unused sick time.  G. L. c. 149, § 148C (d) (7) (employers not required to compensate for unused sick time).  And although an employee may use accrued sick time under appropriate conditions, such time may be considered "lost" if not used.  Such "use it or lose it" sick time policies are common.  R.J. Nobile, Guide to Employee Handbooks:  A Model for Management with Commentary § 7:113 (2017).  Because accrued, unused sick time is not compensable under a "use it or lose it" sick time policy, such time clearly is not a wage under the act.

However, under Massport's sick time policy, rather than requiring employees to forfeit any accrued, unused sick time when they separate from the agency, Massport pays departing employees a certain percentage of that sick time. This compensation is payable under two conditions: the employee must have worked at Massport for at least two years, and he or she must not have been terminated for cause. It is, essentially, a contingent bonus paid to separating employees for not having used all of their accrued sick time and not engaging in conduct warranting termination for cause.

The only contingent compensation recognized expressly in the act is commissions, which are considered wages when they "ha[ve] been definitely determined and due and ha[ve] become payable to [the] employee." G. L. c. 149, § 148. We have not broadly construed the term "wages" for the purposes of the act to encompass any other type of contingent compensation. See, e.g., Weems, 453 Mass. at 153-156.

In Weems, we evaluated a bonus program through which the employer offered bonuses in the form of restricted stock options. Id. at 148-149. The stock options were transferred to the employee contingent upon the employee remaining with the company for the time it took the stock to vest. Id. at 149. We held that the forfeiture provision of the program did not violate the Wage Act, concluding that the bonuses did not

constitute wages under the act because they were contingent upon employment with the company at the time the options vested.  Id. at 153-154.  We see little difference between the bonus stock options in Weems, which were only transferable to the employee if he or she is employed at the time the options vest, and the sick pay at issue here, which is only available to departing Massport employees meeting certain criteria.[7]

Furthermore, the designation of sick pay as wages in these circumstances would put Massport in the position of being unable to comply with the Wage Act.  Mui separated from Massport during the pendency of disciplinary proceedings that ultimately ended in the agency seeking to terminate his employment.  Thus, the question whether the agency owed Mui any sick pay at all was in dispute at the time of Mui's separation; the issue was not resolved until well after the Wage Act deadline had passed.

In fact, if sick pay were a wage under the Wage Act, Massport would not have been able to comply with the act even without the then-pending grievance procedure.  The retirement board set a retroactive retirement date, but did not do so until after payment of all "wages" would have been due, assuming at

---

[7] In Weems v. Citigroup, Inc., 453 Mass. 147, 154 (2009), we noted that the stock option bonus program was also discretionary.  However, because the discretion to award the bonuses had already been exercised in the plaintiffs' favor, the plaintiffs in Weems were in the same position as Mui in that they were both promised bonus compensation under particular conditions.

most a biweekly pay period.  G. L. c. 149, § 148.

Because Massport would not have been able to compensate Mui for sick time within the required Wage Act time frame, construing sick time compensation as wages under the Act would put Massport in an impossible position.  "[W]herever possible . . . we read [statutes] in a commonsense way to . . . avoid absurd results" (citations omitted).  Commonwealth v. Morgan, 476 Mass. 768, 778 (2017).  See Commonwealth v. Traylor, 472 Mass. 260, 269 (2015) (penal statutes are to be construed strictly).

Conclusion.  For all of the foregoing reasons, the judgment is vacated and the case is remanded to the Superior Court for entry of an order allowing Massport's motion for judgment on the pleadings.

So ordered.