NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-435

AMITABH CHANDRA

vs.

PETER DECAPRIO & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In these cross appeals, Peter DeCaprio, Timothy O'Brien, and Crow Point Partners, LLC (Crow Point), appeal from an amended Superior Court judgment in favor of Amitabh Chandra on Chandra's Wage Act claim.  See G. L. c. 149, §§ 148-150. Chandra appeals from a jury-waived verdict in Crow Point's favor on his breach of contract claim.[2]  On appeal, Crow Point claims that Chandra's compensation was not "wages" because it was

_____

[1] Timothy O'Brien and Crow Point Partners, LLC.

[2] After trial, the judge dismissed Chandra's claims for breach of the covenant of good faith and fair dealing, breach of fiduciary duty, tortious interference with advantageous relations, accounting, and for declaratory relief.  Crow Point's counterclaims for fraudulent inducement, breach of contract, unjust enrichment, and conversion were similarly dismissed. None of these claims are before us on appeal.

discretionary and contingent.  In his cross appeal, Chandra claims that the judge erred in finding that Crow Point did not breach his employment contract; that DeCaprio and O'Brien cannot be absolved from personal liability; and that board approval was required for his termination.  We affirm in part and reverse in part.

1.  The Wage Act.  In awarding summary judgment to Chandra on his Wage Act claim, the judge held that "the salary promised to Chandra was fixed by written contract at an amount equal to whatever salary was paid to DeCaprio and O'Brien."  Crow Point claims here that while the July 2014 side letter required that Chandra be compensated "at least as equal" to DeCaprio and O'Brien, it was error to categorize that compensation as "fixed" or as a "wage" under the Wage Act.  We agree.

"'Wages' are salary (or more colloquially 'pay'), from an employer to an employee, including holiday and vacation pay, and certain delineated commissions."  O'Connor v. Kadrmas, 96 Mass. App. Ct. 273, 287 (2019), citing G. L. c. 149, § 148. "Compensation of this sort can be neither discretionary nor contingent in order to be considered 'wages' within the meaning of the Wage Act."  O'Connor, supra at 288, citing Mui v. Massachusetts Port Auth., 478 Mass. 710, 713 (2018).  See Weems v. Citigroup, Inc., 453 Mass. 147, 153-154 (2009); Prozinski v.

2

Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 603 (2003).

With these principles in mind, we conclude that the compensation under the July 2014 side letter are not "wages" within the scope of the Wage Act.  That letter states, in part, as follows:

> "Commencing January 1, 2014[,] and continuing so long as you are a member of the Company, the Company hereby agrees to employ you in a principal capacity and pay you at least as equal to O'Brien and DeCaprio each year as compensation for your services, which compensation shall be payable as guaranteed payments in installments."

As set forth above, Chandra's compensation was contingent on what the company paid DeCaprio and O'Brien.  Chandra was not promised a specific pay rate or salary.  In fact, Chandra's compensation was further contingent on the legacy revenue generated by the company.  The July 2014 side letter goes on to state:

> "Notwithstanding anything in this side letter to the contrary, in the event there is a twenty percent (20%) reduction in Legacy Revenue by the end of the Company's then current fiscal year, the compensation payments to be made herein by the Company will change to a new amount as negotiated between you, O'Brien and DeCaprio in good faith."

Pursuant to this provision, if the legacy revenue dropped by twenty percent, then Chandra's compensation would be adjusted to a new amount as negotiated by the parties.  Although the legacy revenue did not so reduce during the times relevant here, this

3

provision created a separate contingency with an added measure of discretion occasioned by future negotiations. These provisions are not common indicia of salary or pay as the Wage Act contemplates. In fact, this compensation structure is more akin to profit distributions paid to the owners of the company. See O'Connor, 96 Mass. App. Ct. at 287. Accordingly, Chandra's compensation did not qualify as "wages" under the Wage Act, and the judge's decision to the contrary was error. That aspect of the amended judgment must be reversed.[3]

2. Breach of contract claim. Chandra claims that the judge erred in finding that Crow Point did not breach his employment agreement in the July 2014 side letter by not paying him his full salary, and later, by terminating him from the company. We disagree.

Chandra asserts that the July 2014 side letter is clear and unambiguous and should be enforced according to its terms. See Siebe, Inc. v. Louis M. Gerson Co., 74 Mass. App. Ct. 544, 549 (2009). By his reading of the letter, his "compensation for [his] services" placed no requirement on Chandra to develop or

---

[3] Given this outcome, we need not reach Crow Point's claim that Chandra did not "earn" the wages. Similarly, we also need not address Crow Point's claim that the judge erred by determining that the $150,000 interest free, forgivable loan did not offset the compensation Chandra claimed he was due.

4

sustain any particular level of revenue.  We are less sanguine on the question of ambiguity.

In determining whether an ambiguity exists, "the court must first examine the language of the contract by itself, independent of extrinsic evidence."  Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008).  "Contract language is ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken" (quotation omitted).  Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999), quoting Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989).

We review the question of ambiguity de novo.  Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017).  Here, the word "services" in the side letter is ambiguous as the word can support reasonable differences of opinion as to its meaning. Accordingly, the judge properly took evidence on the questions of what Chandra's services were and whether he performed them in a satisfactory manner.  See Boothby v. Texon, Inc., 414 Mass. 468, 481 (1993) ("[t]he question of satisfactory performance is a question of fact").

5

After trial, the judge made extensive findings of fact on the issues. In particular, the judge found: "Chandra's right to employment was conditioned on satisfactory performance. Chandra's failure to generate any meaningful revenue for Crow Point over three years was unsatisfactory performance that justified defendants' decision to fire him." He also found that "Chandra, DeCaprio, and O'Brien all understood and agreed that, as members and principals of Crow Point, each of them would be responsible for developing revenue producing relationships that would bring revenues into the firm." In addition, the judge found:

> "It was reasonable for DeCaprio and O'Brien to conclude by late 2016 that Chandra's performance as a principal of Crow Point had been unsatisfactory. All of the principals of Crow Point were expected, over time, to bring in business that would substantially contribute to the company's net revenues. Chandra understood and agreed with that expectation when he entered into his employment agreement with Crow Point. But Chandra failed to attract business that resulted in Crow Point earning meaningful additional net revenue."

The net effect of the judge's findings of fact was that "Chandra had failed to perform satisfactorily" because he was "never able to generate revenue for Crow Point, which was a key responsibility of all of Crow Point's principals."

We will affirm a judge's findings of fact unless they are clearly erroneous. See Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 183 (2013); Mass. R. Civ. P. 52 (a), as amended,

6

423 Mass. 1402 (1996). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (citation omitted). Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977). On the current record, we are unable to say that the judge's findings of fact were clearly erroneous. In fact, Chandra does not even endeavor to meet this burden and instead he merely offers his own alternative narrative of the matter. Accordingly, we discern no basis to disturb the judge's finding that Crow Point did not breach the agreement.

3. Personal liability. Chandra also claims that O'Brien and DeCaprio are individually liable to pay Chandra the contractual damages owed by Crow Point. We disagree.

Section 8.02 of the company's second operating agreement provides that no member or director shall be liable to the company or its members for any act or omission undertaken in good faith on behalf of Crow Point, except with respect to liability incurred as a result of that person's gross negligence, bad faith, or willful misconduct. Despite this, Chandra claims that under the terms of the July 2014 side letter, both O'Brien and DeCaprio promised Chandra they would put capital into Crow Point to fund its obligations in the event

7

it lacked sufficient funds to do so. Further, he argues that the decision not to contribute capital was a personal decision of the two individuals that was not grounded in good faith, and it did not inure to the benefit of Crow Point itself.

Chandra's argument ignores that, after trial, the judge found as a matter of fact that Section 8.02 does absolve DeCaprio and O'Brien of personal liability. See Bascombe v. Inferrera, 271 Mass. 296, 299-300 (1930) (determination of good faith presents question of fact). The judge expressly found that the two believed their actions in reducing Chandra's compensation and then terminating him were lawful, and that "neither of them acted in bad faith or engaged in willful misconduct."[4] Chandra's assertions to the contrary, without establishing -- or even claiming -- that the judge's findings were clearly erroneous, do not provide a proper appellate argument.

4. Board authorization. Finally, Chandra claims that the employment actions against him violated the express terms of the July 2014 side letter, and because they were not authorized by any vote of Crow Point's board of directors, they also violated the terms of the second operating agreement. We disagree.

---

[4] Chandra does not allege that O'Brien or DeCaprio is liable under a theory of gross negligence.

8

As an initial matter, Chandra cites to no legal authority to support this claim, and in that posture, it is waived. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) (appellant's brief must support each contention "with citations to the authorities . . . on which the appellant relies"). Even if the claim were not waived, the judge found, as a matter fact, that:

> "DeCaprio had full discretion to set Chandra's salary and even to terminate Chandra's employment, so long as he did so in a manner that was consistent with Chandra's employment agreement. This was part of DeCaprio's authority as the senior officer of Crow Point, under § 5.01 of the operating agreement, to exercise 'responsibility for the day-to-day management of the business of the Company.'"

The judge found that producing revenue was a "key responsibility of all of Crow Point's principals." Because Chanda failed to produce any revenue for Crow Point, DeCaprio, as president and chief executive officer, was authorized to change Chandra's compensation or to terminate him as part of DeCaprio's role to manage the day-to-day operations of the company. See Flomenbaum v. Commonwealth, 451 Mass. 740, 746 (2008); Goldhor v. Hampshire College, 25 Mass. App. Ct. 716, 722-723 & n.9 (1988).

Chandra nonetheless claims that DeCaprio's discretion was cabined by Section 5.04(a)(xvi) of the second operating agreement, which provides that Crow Point cannot "change any

9

compensation agreement or benefits arrangement (other than incentive compensation) of any employee who has executive responsibility in respect of any line of business of the Company" without the consent of the board.  However, as the judge found, this section does not apply to Chandra because he never had executive responsibility over "an entire line" of Crow Point's business, and his termination did not require board approval.  Chandra claims the judge erred because this provision required only that the employee had executive authority over "any line of business."  Be that as it may, Chandra's recitation of his titles as "Chief Investment Officer," without record support explaining that this gave him authority over a line of business, does not establish that the judge's conclusion was a clearly erroneous.  See Mass. R. A. P. 16 (a) (9) (A).

5.  Conclusion.  So much of the amended judgment that determined that the defendants violated the Wage Act is

10

reversed, and judgment on the Wage Act claim shall enter for the defendants.  The remainder of the amended judgment is affirmed.

So ordered.

By the Court (Meade,
  Desmond & D'Angelo, JJ.[5]),

Clerk

Entered:  March 5, 2025.

---

[5] The panelists are listed in order of seniority.