SUPREME JUDICIAL COURT 
 
 CARLOS NUNEZ vs. SYNCSORT INCORPORATED & another.[1]

 
 Docket:
 SJC-13709
 
 
 Dates:
 April 7, 2025 - October 22, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Massachusetts Wage Act. Practice, Civil, Summary judgment. Statute, Construction. Words, "Wages."
 
 

             Civil action commenced in the Concord Division of the District Court Department on February 25, 2021.
            The case was heard by Lynn C. Brendemuehl, J., on motions for summary judgment, and a motion for reconsideration was considered by Catherine K. Byrne, J.
            The Supreme Judicial Court granted an application for direct appellate review.
            Raven Moeslinger for the plaintiff.
            Bronwyn L. Roberts (Charlotte Drew also present) for the defendants.
            Ben Robbins & Natalie Logan, for New England Legal Foundation, amicus curiae, submitted a brief.
            WOLOHOJIAN, J.  The plaintiff entered into an agreement with his employer, Syncsort Incorporated (Syncsort or company), whereby he would receive two retention bonus payments if he remained with the company until fixed dates and remained in good performance standing without any reduction in his work schedule.  The question in this case is whether those retention bonus payments are "wages" for purposes of the Wage Act, G. L. c. 149, § 148.  We conclude that they are not; instead, they are a form of additional, contingent compensation outside the ambit of the Wage Act.  We accordingly affirm the judgment in favor of the defendants dismissing the plaintiff's Wage Act claim.[2]  
            1.  Background.  The facts are undisputed, and we draw them from the parties' joint statement of undisputed facts and the exhibits that accompanied it.
            Syncsort is a data management software company that, in or around May 2020, rebranded itself as Precisely after it merged with another business.  Around that same time, Syncsort hired the plaintiff as a senior director of finance at an annual salary of $185,000.  This position was full time, and the plaintiff's duties included financial planning and analysis for the company.  
            A few months later, the plaintiff's position became part time, and his salary was reduced commensurate with the reduction in his hours.  Around the same time, the plaintiff and Syncsort entered into a retention bonus agreement.  The first paragraph of the agreement specified that the retention bonus was "an incentive for you [(the plaintiff)] to continue to contribute your efforts, talents and services to [Syncsort] during this time of change and integration" for the company.  
            The agreement provided that the plaintiff "[would] be eligible to earn" a retention bonus of $15,000 in two equal tranches on two separate "retention dates":  November 18, 2020, and February 18, 2021.  The agreement further provided:
"In order to earn each [b]onus [t]ranche, you must remain employed by [Syncsort], or any of our affiliated entities, with no reduction in your regular work schedule (except for any reasonable adjustments or accommodations as may be required by applicable law or policy), and in good performance standing, through and including the applicable [r]etention [d]ate."
The agreement also contained a disgorgement provision requiring the plaintiff to return the entire retention bonus should he voluntarily terminate his employment before either retention date or if he were to be terminated for cause.  
            The plaintiff remained employed by Syncsort through November 18, 2020 (the first retention date), and Syncsort paid him the first tranche payment twelve days later, on November 30, 2020.  In January 2021, the plaintiff was notified that his employment would end on February 18, 2021 (the second retention date), due to a reduction in force.[3]  He remained employed until then, and Syncsort sent him the second tranche payment eight days later, on February 26, 2021.
            The plaintiff filed the underlying suit against Syncsort and its chief executive officer asserting three causes of action, only one of which is before us:  his claim under the Wage Act.[4]  In brief, the plaintiff contends that the Wage Act was violated because he was not timely paid the second tranche of the retention bonus on his last day of employment.
            The parties cross-moved for summary judgment, and a District Court judge denied both motions in margin endorsements without explanation.  The parties then jointly moved for reconsideration.  On reconsideration, a different District Court judge entered judgment in the defendants' favor on the ground that the retention bonus payment was not a "wage" within the meaning of the Wage Act because it was a form of contingent compensation.
            The plaintiff appealed from that judgment, and a panel of the Appellate Division of the District Court Department affirmed for essentially the same reason.  The plaintiff then timely filed a notice of appeal, and we granted his application for direct appellate review. 
            2.  Discussion.  The issue before us is whether the retention bonus payments in this case are "wages" within the meaning of § 148 of the Wage Act.  If they are "wages" for that purpose, then Syncsort violated the Wage Act by failing to pay the second tranche payment on the plaintiff's last day of employment.  See G. L. c. 149, § 148 ("any employee discharged from . . . employment shall be paid in full on the day of his discharge"); Reuter v. Methuen, 489 Mass. 465, 470-471 (2022).  If they are not "wages," then the Wage Act was not violated, and Syncsort's obligations would be governed under ordinary contract principles, which, as we have already noted, are not at issue because the plaintiff has waived consideration of his breach of contract claim for purposes of summary judgment.  See note 4, supra.  
            We review de novo a ruling on cross motions for summary judgment.  Berry v. Commerce Ins. Co., 488 Mass. 633, 636 (2021).  Similarly, the "interpretation of written contractual provisions is [a] question of law reviewed de novo," Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC, 495 Mass. 207, 215 (2025), citing Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-447 (1992), as are questions of statutory interpretation, Reuter, 489 Mass. at 470.
            "The Wage Act requires 'every person having employees in his service' to pay 'each such employee the wages earned' within a fixed period after the end of a pay period."  Melia v. Zenhire, Inc., 462 Mass. 164, 169-170 (2012), quoting G. L. c. 149, § 148.  The purpose of the Wage Act is "to prevent the unreasonable detention of wages."  Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 720 (2002).  "The statute was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages."  Melia, 462 Mass. at 170, quoting Cumpata v. Blue Cross Blue Shield of Mass., Inc., 113 F. Supp. 2d 164, 167 (D. Mass. 2000).  See Devaney v. Zucchini Gold, LLC, 489 Mass. 514, 518 n.12 (2022).  The protections of the Wage Act extend to "executive, administrative or professional" employees, and are not confined to hourly or nonexecutive employees.  G. L. c. 149, § 148.  See Okerman v. VA Software Corp., 69 Mass. App. Ct. 771, 778 (2007).  Severe consequences may flow from even minor violations of the Wage Act, including potential criminal liability, treble damages, and personal civil liability against a company's owner.  See G. L. c. 149, §§ 148, 150; Reuter, 489 Mass. at 468.
            Under § 148 of the Wage Act, an employer must promptly pay "wages earned" during a given pay period.  Not all forms of employee compensation or benefits are "wages."  See, e.g., Boston Police Patrolmen's Ass'n, 435 Mass. at 721 (contributions to deferred compensation plan are not "wages").  The Legislature has specified that the term "shall include any holiday or vacation payments due an employee under an oral or written agreement," and "so far as apt, . . . payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee."[5]  G. L. c. 149, § 148.  See Weems v. Citigroup Inc., 453 Mass. 147, 151 (2009).  Beyond that, the act provides that wages shall be paid "weekly or bi-weekly," or monthly for certain employees, giving some indication that "wages" are akin to ordinary payment from an employer to an employee in exchange for labor or services.  See Parker v. EnerNOC, Inc., 484 Mass. 128, 135 n.11 (2020); O'Connor v. Kadrmas, 96 Mass. App. Ct. 273, 287-288 (2019).  Otherwise, the term "wages" is undefined by the statute.
            "The only contingent compensation recognized expressly in the act is commissions, which are considered wages when they 'ha[ve] been definitely determined and due and ha[ve] become payable to [the] employee.'"  Tze-Kit Mui v. Massachusetts Port Auth., 478 Mass. 710, 713 (2018), quoting G. L. c. 149, § 148.  "We have not broadly construed the term 'wages' for the purposes of the act to encompass any other type of contingent compensation."  Tze-Kit Mui, 478 Mass. at 713.  Indeed, our appellate cases have uniformly rejected attempts to include other forms of contingent compensation within the meaning of "wages" where the contingency at issue imposed some requirement beyond the services or labor an employee provides in exchange for his or her compensation.  See id. (accrued, unused sick time not "wages" because only available to departing employees meeting certain eligibility criteria); Weems, 453 Mass. at 153-154 (discretionary stock option plan not wages because contingent on continued employment); O'Connor, 96 Mass. App. Ct. at 288 (profit distributions under stock agreement not wages because, among other reasons, of their contingent nature); Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 603 (2003) (severance pay not wages because contingent upon severance).  Following our lead, Federal courts have reached the same conclusion for the same reason.  See Weiss v. DHL Express, Inc., 718 F.3d 39, 47-48 (1st Cir. 2013) (retention bonus not "wages"); Sheedy vs. Lehman Bros. Holdings Inc., U.S. Dist. Ct., No. 11-11456, slip op. at 8-9 (D. Mass. Nov. 14, 2011) (incentive signing bonus depending upon employee retention not "wages"); Doucot v. IDS Scheer, Inc., 734 F. Supp. 2d 172, 193 (D. Mass. 2010) (bonus not "wages"); Sterling Research, Inc. vs. Pietrobono, U.S. Dist. Ct., No. 02-40150, slip op. at 28-29 (D. Mass. Nov. 21, 2005) (equity under stock agreement not wages).
            The retention bonus payments at issue in this case do not fall within any of the enumerated forms of benefits or compensation that the Legislature has included in "wages"; they are neither vacation or holiday payments, nor are they commissions.[6]  Indeed, the plaintiff does not contend otherwise.  Nonetheless, the plaintiff asks that we deem the retention bonus payments to be "wages" because they are "a pledge or payment of usually monetary remuneration by an employer especially for labor or services."[7]  Parker, 484 Mass. at 135 n.11, quoting Webster's Third New International Dictionary 2568 (1993).  This argument is premised on a fundamentally flawed understanding of the nature of the retention agreement into which he entered.
            Retention agreements are used to encourage employees to remain with the company through a particular date.  Especially during times of corporate transition, the purpose of such bonuses is often to secure the services of the employee during a period of corporate uncertainty when the employee might otherwise be tempted to leave.  Cf. Attorney Gen. v. Woburn, 317 Mass. 465, 467 (1945) ("[t]he offer of a bonus is the means frequently adopted to secure continuous service from an employee, to enhance his efficiency and to augment his loyalty to his employer").  On the one hand, a retention agreement benefits the employer by securing the services of the employee to a date that is of value or importance to the company; on the other hand, it benefits the employee by compensating him or her for taking the risk that he or she might be let go during a period of corporate transition or uncertainty or for forgoing other opportunities to leave the employment.  See M.S. Sirkin, L.K. Cagney, & A.S. Rattner, Executive Compensation § 6.06[2] (2025).
            The retention agreement at issue in this case falls squarely within this model.  The agreement identified its purpose as providing an incentive to the plaintiff to remain with the company during a "time of change and integration" following its merger with another company and subsequent rebranding.  The retention bonus payments were in addition to the plaintiff's salary.  The agreement provided a set sum as a retention bonus and established two fixed dates for each retention payment.  The second date coincided with the date of the plaintiff's termination.  The retention bonus payments were made in exchange for the plaintiff's agreement not to leave the company before the fixed dates.  Put otherwise, they were additional compensation that was contingent, or conditioned, on his continued employment to dates set by Syncsort to which the plaintiff agreed.  They were also further conditioned on the plaintiff remaining in good performance standing with no reduction in his regular work schedule.  The bonus payments were not made solely in exchange for the plaintiff's labor or services.
            We have not previously considered whether retention bonuses are "wages" within the meaning of the Wage Act.  That said, we have concluded that other forms of additional compensation that are contingent on an employee's continued employment to a certain date are not "wages."  For example, in Weems, 453 Mass. at 154, we concluded that a discretionary stock program "had an important contingency attached to it:  an employee . . . would receive the full benefit of the stock . . . only if the employee remained with the company for the defined period after the award."  Similarly, in Tze-Kit Mui, 478 Mass. at 714, we held that the employer's sick time policy did not constitute "wages" because it was available only to departing employees who had worked a certain length of time and were not terminated for cause.  We see no reason why retention agreements should be treated any differently from other types of compensation that are contingent upon continued employment to a particular date and are in addition to the compensation the employee receives in exchange for his or her labor and services.  Using similar reasoning, the United States Court of Appeals for the First Circuit has concluded that retention bonuses are not "wages" for purposes of the Wage Act.  In a case involving a retention bonus agreement having almost identical terms to the one in this case, a panel of that court concluded that the retention bonus was not a "wage" because it was contingent upon the employee's continued employment.  Weiss, 718 F.3d at 47.  Like the retention bonus at issue here, the retention bonus in Weiss not only was contingent upon continued employment through a certain date, but also required the employee to remain "in good standing," provided that the employee would receive the full bonus if he were terminated without cause, and stated that the employee would be ineligible for the bonus if he voluntarily left the company or were terminated for good cause.  Id. at 42.
            For all of these reasons, we conclude that the retention bonus payments under the retention agreement between the plaintiff and Syncsort were not made solely in exchange for the plaintiff's labor or services, but rather depended on additional contractual conditions, and were additional contingent compensation outside the scope of the Wage Act.
Judgment affirmed.
            BUDD, C.J. (concurring).  The court holds that the plaintiff's retention bonus payments are not wages under G. L. c. 149, § 148, because they were contingent on certain enumerated conditions and not solely in exchange for the plaintiff's labor or services.  Ante at    .  While I concur in the result, I write separately to emphasize that the reason that the retention bonus does not qualify as a wage under the Wage Act is that it was offered in addition to the plaintiff's regular pay, in exchange for something more than his regular work.
            Although the term "wages" is not defined in the act, the court concludes, as I do, that based on a reading of the whole statute, the act applies to ordinary pay compensating an employee for his or her typical work.  See ante at    .  Conversely, then, compensation provided in exchange for something other than the typical work that an employee performs as part of his or her job is not a wage under the act.[1]  See, e.g., Tze-Kit Mui v. Massachusetts Port Auth., 478 Mass. 710, 713 (2018) (sick leave not wages because not direct compensation for employee's work); O'Connor v. Kadrmas, 96 Mass. App. Ct. 273, 288 (2019) (stock distributions not wages but rather compensation that "depended on . . . revenues generated by other doctors").  
            As the court appears to acknowledge, the mere existence of a contingency is not a reliable way to determine whether a payment is a wage.  See ante at     (describing payments that are not wages because they are contingent and additional).  This is readily apparent when one considers that the payment of a wage is itself contingent on an employee completing the ordinary duties associated with his or her job.  See G. L. c. 149, § 148.  Cf. Parker v. EnerNOC, Inc., 484 Mass. 128, 133 (2020) ("wages, once earned, are to be paid on a regular schedule" [emphasis added]).  
            Indeed, it is the "additional" element of the court's test that does the work here.  For example, if an employee could collect her weekly paycheck only by wearing a red shirt on payday, presumably the court would conclude that, notwithstanding the contingency, the payments would count as wages because they would be provided "in exchange for the [employee]'s labor or services."  Ante at    .  
            In fact, in appellate cases concluding that a payment is not a wage, the payment at issue almost always has been in exchange for something other than typical work.  For example, in Weems v. Citigroup Inc., 453 Mass. 147, 150 (2009), the stock option bonus payments at issue were annual, discretionary performance awards separate from the employees' base salaries.  Likewise, in O'Connor, 96 Mass. App. Ct. at 288, the stock distributions at issue were not wages because they were "profit distributions to shareholders to which they [were] entitled because of their ownership interest in the corporation, not because of their employment."  Similarly, in Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 603 (2003), the compensation at issue, the employee's severance payment, was not a wage because it was not compensation for work completed, but rather a conciliatory payment made upon separation from the company.  See Tze-Kit Mui, 478 Mass. at 713; O'Connor, supra.  
            Based on the court's own analysis, the same is true of the bonus payments here.  That is, the payments were not compensation for work completed, but for something else.  During a time of uncertainty at his company, the plaintiff had to remain "in good performance standing with no reduction in his regular work schedule," and remain employed through "dates set by [the company]."  Ante at    .  Those conditions were not an ordinary feature of his compensation.  Instead, the company was paying the plaintiff something extra to buy an assurance of continuity that his ordinary salary did not provide.  Thus, the bonus payments were "in addition to the plaintiff's salary" rather than a component of the salary itself (emphasis added).  Id. at    .  Because the function of the payments was something other than typical compensation for typical work, they were not wages.  
            In sum, whether compensation is a wage under the statute depends on its function, not on whether it is contingent on one or more conditions.  Contingencies matter to the analysis only to the extent that they inform the function of the underlying payment.
 
footnotes

 
            [1] Joseph Rogers, who served as the chief executive officer of Syncsort Incorporated (Syncsort) during the time frame pertinent to this case.
            [2] We acknowledge the amicus brief submitted by New England Legal Foundation.
            [3] Also in January 2021, Syncsort offered the plaintiff a separation agreement that, had it been executed, would have provided that the plaintiff would receive a severance payment of $7,115.40 in exchange for a release of any claims against the company.  Although the parties did not enter into the separation agreement, the company nonetheless mistakenly made the severance payment to the plaintiff after his termination.  Deciding the case as we do, we need not confront Syncsort's claim that the mistaken severance payment should be offset against any recovery under the Wage Act.  Syncsort does not raise any other argument concerning the mistaken severance payment.
            [4] The other two claims were for breach of contract and unjust enrichment.  The plaintiff waived consideration of these claims for purposes of summary judgment by filing an assented-to stipulation dismissing them without prejudice, and they are not before us. 
            [5] While the act requires that commissions be paid when the amount of the commission has been definitely determined and the commission has become due and payable, "other forms of wages, once earned, are to be paid on a regular schedule."  Parker v. EnerNOC, Inc., 484 Mass. 128, 133 (2020).  
            [6] "The term 'commission' is commonly understood to refer to compensation owed to those in the business of selling goods, services, or real estate, set typically as a percentage of the sales price."  Suominen v. Goodman Indus. Equities Mgt. Group, LLC, 78 Mass. App. Ct. 723, 738 (2011).
            [7] We note that the plaintiff does not argue that the retention agreement was a "special contract."  Special contracts are agreements whereby the parties agree to circumvent the requirements of the Wage Act.  Such agreements are unlawful even if they are voluntary and assented to.  See G. L. c. 149, § 148 ("No person shall by a special contract with an employee or by any other means exempt himself from [the Wage Act]"); Melia, 462 Mass. at 170 ("The Wage Act proscribes 'special contracts' that exempt employers from its provisions"); Camara v. Attorney Gen., 458 Mass. 756, 760-761 (2011) (agreement to circumvent Wage Act is unlawful even if voluntary and assented to).
 
footnotes for concurring

 
            [1] This does not mean that overtime and Sunday pay are excluded from the protections of the act.  To the contrary, as we previously have held, overtime pay is a wage.  See Sutton v. Jordan's Furniture, Inc., 493 Mass. 728, 740 (2024) ("Section 148 applies to all wages earned, including those prescribed by statute"); Drive–O–Rama, Inc. v. Attorney Gen., 63 Mass. App. Ct. 769, 769–770 (2005) (failure to pay time and one-half violated Wage Act).
            At any rate, even overtime pay is typical pay for typical work.  Work is not atypical simply because it falls on the weekend or lasts longer than usual.  The inquiry I propose asks which types of pay are the typical forms of compensation for the typical work of the employee.  Overtime pay, required by statute, is expected compensation for an employee's overtime work.